# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4730-14T3

A.M.C.,[1]

    Plaintiff-Appellant,

v.

P.B.,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

October 21, 2016

APPELLATE DIVISION

    Argued September 14, 2016 — Decided October 21, 2016

    Before Judges Fuentes, Simonelli and Gooden Brown.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-2153-15.

    Susan McCue argued the cause for appellant (Central Jersey Legal Services, Inc., attorneys; Ms. McCue, on the briefs).

    Bette R. Grayson argued the cause for respondent (Grayson and Associates, LLC, attorneys; Ms. Grayson, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9)—(10).

In this appeal, we are asked to determine whether the trial court erred when it denied plaintiff a final restraining order (FRO), pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, even though it found that her husband, a police officer, physically assaulted her on two separate occasions over a three-week period. Applying the two-prong analysis we articulated in Silver v. Silver, 387 N.J. Super. 112, 125—27 (2006), the trial judge found an FRO was not necessary to protect plaintiff from future acts or threats of violence because plaintiff "failed to establish even a mere likelihood that the parties would continue to interact in the future" or that defendant posed a threat to her.

We reverse. The trial court misapplied the two-prong standard we articulated in Silver when it failed to adequately consider: (1) the inherently violent nature of the predicate acts defendant committed against plaintiff over a three-week period; (2) the fact defendant physically assaulted plaintiff to prevent her from leaving the marital residence and seeking refuge in a women's shelter; and (3) the parties' history of domestic violence, which included both violent behavior and threats of further violence. Under these circumstances, the need to issue an FRO to protect plaintiff from further abuse by

defendant is "self-evident." Silver, supra, 387 N.J. Super. at 127.

The record also shows defendant, a City of Newark Police Officer, was not served with plaintiff's complaint or with the temporary restraining order (TRO) issued by the Middlesex County Family Part, as required by N.J.S.A. 2C:25-28(l). Further, "the clerk of the court or other person designated by the court" failed to notify the Chief of Police of the Newark Police Department, members of the State Police, or "any other appropriate law enforcement agency" that a TRO had been issued against defendant, as required under N.J.S.A. 2C:25-28(n). These failures also violated the procedures for service of process approved by the Supreme Court in the most recent edition of the New Jersey Domestic Violence Procedures Manual.

We hold the trial court had an obligation to determine what caused these violations of law and Supreme Court policy. The failure to carry out these procedural requirements compromises the safety of domestic violence victims and undermines defendants' constitutionally guaranteed right to due process of law. We further hold that the trial court erred as a matter of public policy when it considered the Judiciary's failure to carry out these legal responsibilities as a factor in favor of denying plaintiff's application for an FRO.

A-4730-14T3

On June 9, 2015, plaintiff A.M.C. fled her marital residence in Newark and took refuge in a women's shelter located in Middlesex County. Aided by the shelter staff and represented by Central Jersey Legal Services, plaintiff filed a complaint that same day in the Family Part, Middlesex County,[2] alleging that her husband P.B., a police officer in the Newark Police Department, committed acts of domestic violence[3] against her in the form of terroristic threats, N.J.S.A. 2C:12-3, sexual assault,[4] N.J.S.A. 2C:14-2, physical assault, N.J.S.A. 2C:12-1, and harassment, N.J.S.A. 2C:33-4.

The Family Part considered plaintiff's ex parte application, as authorized by N.J.S.A. 2C:25-28(i) and Rule 5:7A(a), and granted plaintiff a TRO which, inter alia, prohibited defendant from contacting plaintiff in any way, enjoined defendant from possessing any firearms, and directed any law enforcement officer having jurisdiction "to search for

---

[2] Although defendant committed the acts of domestic violence when the parties resided in Essex County, venue is also proper "in the county where the victim of domestic violence is sheltered." R. 5:7A(f).

[3] See N.J.S.A. 2C:25-19a (defining domestic violence).

[4] Plaintiff, through her counsel, withdrew the sexual assault charge at the FRO hearing.

A-4730-14T3

and to seize any issued permit to carry a firearm." As required by N.J.S.A. 2C:25-28(l), the form order directed all law enforcement, including by implication the Newark Police Department,[5] to serve defendant with copies of the complaint and TRO. The court directed the parties to appear at 8:30 a.m., on June 18, 2015, for an evidentiary hearing to determine whether an FRO against defendant was warranted.

Both parties appeared at the FRO hearing on the date and time indicated in the TRO and both were represented by counsel. At the hearing, defendant testified he was not served with copies of the complaint or the TRO.

> DEFENSE COUNSEL: How did you find out about it?
>
> DEFENDANT: I got a call from a male voice from a 732 phone number saying that I had a TRO against me.
>
> . . . .
>
> DEFENSE COUNSEL: And did he send it to you? Did he call you? Did . . . you get a copy of that?
>
> DEFENDANT: No.

---

[5] Defendant's status as a police officer is particularly relevant here because New Jersey law provides that "[n]otice of temporary restraining orders issued pursuant to this section shall be sent by the clerk of the court or other person designated by the court to the appropriate chiefs of police, members of the State Police and any other appropriate law enforcement agency or court." N.J.S.A. 2C:25-28(n) (emphasis added).

DEFENSE COUNSEL: What did you do after you heard this?

DEFENDANT: I called my brother and asked him, you know, what should I do. And he . . . referred me to . . . you. To a lawyer's office.

DEFENSE COUNSEL: And . . . did you come to my office?

DEFENDANT: Yes.

DEFENSE COUNSEL: And, if you know, how did we find out about this TRO?

. . . .

DEFENDANT: Oh, I guess you called . . . the New Brunswick Courts and they faxed you over a copy[.] I believe that's [how] it went.

DEFENSE COUNSEL: And that's [how] you learned about this TRO against you?

DEFENDANT: I saw the hard copy, yes.

DEFENSE COUNSEL: And what day did you learn about the TRO against you?

DEFENDANT: This was the . . . 15th was the phone call. I actually saw it in your office[.] [I]t was Wednesday, the 16th, maybe. I don't know. I'm not sure of the date.[6]

The parties married in October 2014. They do not have any children. Plaintiff testified she "permanently" left her

---

[6] June 15, 2015 was a Monday. The Family Part issued the TRO on Tuesday, June 9, 2015. The FRO hearing occurred on Thursday, June 18, 2015. Defense counsel did not request that the trial court adjourn the FRO hearing to permit defendant more time to prepare. Cf. H.E.S. v. J.C.S., 175 N.J. 309, 321-25 (2003).

marital residence on June 9, 2015, because of defendant's physically abusive behavior. She testified that, as she was leaving, defendant told her "he would make [her] life hell" and stated that he "can harm [her] whenever he wants." Defendant then grabbed and squeezed plaintiff's arm with such force that he left visible bruises. Plaintiff testified defendant grabbed her arm for "[a]bout five minutes." She further testified that while squeezing her arm, defendant stated "he can hurt [her] whenever he feels like it."

Plaintiff offered into evidence photographs depicting the bruises and discolorations that defendant inflicted on her arm. In response to her attorney's question, plaintiff testified she took these photographs "immediately after getting into [a] taxi . . . not more than three minutes" after she left the house. The court admitted the photographs into evidence.

Plaintiff also testified about an incident that occurred on June 7, 2015, two days before she left the marital residence. According to plaintiff, defendant threw two lamps in her direction "to start a fight." The trial judge ultimately rejected plaintiff's account of this event as not credible. The judge accepted defendant's testimony that he played golf that day. Defendant's testimony was corroborated by his mother, who also resides in the house, and by the receipts of his golf trip.

Because this appeal concerns only whether the court should have issued permanent restraints, plaintiff has not challenged the court's findings with respect to this incident.

The trial judge found that sufficient competent evidence supported the second incident of domestic violence, which occurred three weeks before June 9, 2015. Plaintiff testified defendant "was very upset about an Instagram account." Defendant "tried to choke [her]" by squeezing "[her] neck very hard."[7] Plaintiff testified defendant also grabbed her arm, causing visible "red" bruises. The court admitted into evidence photographs plaintiff took that same day, minutes after the incident, which depicted the bruises to her arm and neck. According to plaintiff, these violent assaults caused her physical pain and fear.

Defendant testified in his own defense and called his mother as a witness. Defendant denied ever assaulting or

---

[7] According to plaintiff's appellate brief, the trial judge improperly found that this assault occurred when "[d]efendant grabbed [plaintiff] from the shower and attempted to choke her, leaving marks on her arm and neck." We agree with plaintiff that this was an incorrect statement of fact. Plaintiff's testimony indicates that defendant tried to choke her because he "was very upset about an Instagram account." Plaintiff was not in the shower when this occurred. The trial judge also described plaintiff's testimony as indicating that defendant "broke a phone in December 2014 and hit his car with a tree limb in April 2005." This statement is also unsupported by the record.

physically hurting plaintiff. Defendant's mother corroborated her son's account of their home life. With respect to the June 9, 2015 incident, defendant testified he spoke to plaintiff when he saw her leaving with the suitcases, but did not physically attack her or attempt to stop her from leaving.

At the conclusion of the FRO hearing, but before making his final decision, the judge invited counsel to address the court in summation. Defense counsel addressed the court first. She argued plaintiff had not met her burden of proof on the charge of harassment because no evidence established defendant's intent to harass her. Plaintiff's counsel argued that her client had established three predicate acts of domestic violence, namely harassment, terroristic threats, and assault. Neither attorney addressed whether an FRO was warranted if the court found that defendant committed an act of domestic violence.

### B

The trial judge made specific factual findings that defendant committed the predicate offense of simple assault on June 9, 2015, and three weeks earlier on an unidentified date. Under N.J.S.A. 2C:12-1a(1), a person is guilty of simple assault if s/he "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:11-1a

defines "bodily injury" as "physical pain, illness or any impairment of physical condition."

In support of this finding, the trial judge noted the photographs admitted into evidence depicted plaintiff's physical condition immediately after the June 9, 2015 incident. These photographs show red marks on plaintiff's left forearm. The judge found the photographs were "certainly consistent with her vacating the marital home on June 9th, [2015,] [and] getting into the taxi." The judge next reviewed the photographs depicting the physical trauma plaintiff sustained three weeks earlier. One photograph "show[ed] red marks on the left side of . . . plaintiff's neck." The other photograph showed similar bruises around plaintiff's "left biceps."

The judge acknowledged the parties provided conflicting testimony with respect to these two incidents. Confronted with such irreconcilable accounts of events, the judge stated that "[b]ut for the photographs" he would have found the scales of proof stand "equipoise." Stated more directly, the judge made clear that absent the photographic corroboration, "I probably would not find an act of assault had occurred."

The judge next addressed whether an FRO was warranted. Addressing defendant directly, the judge stated:

> The first step is, was there an act of domestic violence? Mr. [B], I find that you

> did commit an act of assault against the plaintiff.
>
> The second step is, is it necessary for the protection of the plaintiff for the issuance of a final restraining order. And we look at past history, you have one incident on June 7th, [2015,] alleged by the plaintiff, about this argument over lamps[.]
>
> . . . .
>
> [W]hat I find telling is that the defendant was not served with a copy of the temporary restraining order. He . . . was [not] in contact with the plaintiff during that time the plaintiff had vacated the home.
>
> [T]hough I find that there was an assault, I don't find that it is necessary for the protection of the plaintiff to . . . issu[e] . . . the final restraining order at this time.
>
> So, the request for a final restraining order is going to be denied and the temporary restraining order is going to be dismissed.[8]

The trial judge thereafter submitted an "Amplification of Decision," pursuant to Rule 2:5-1(b), which elaborated on his reasons for denying the FRO. Addressing the question before us, the judge expressly acknowledged that the initial failure to serve defendant with a copy of the TRO influenced his refusal to issue an FRO.

---

[8] By order dated June 26, 2015, we granted plaintiff's emergent application and restored the TRO pending the outcome of this appeal.

> In determining whether a Final Restraining Order is necessary to protect Plaintiff from future acts or threats of violence, the [c]ourt found that Defendant was completely unaware that Plaintiff obtained a temporary restraining order, an unawareness evincing the type of relationship the parties had once Plaintiff left the marital home. Defendant appears to have had no desire to have any continuing association with Plaintiff, taking her absence as a sign that their marriage was effectively over, because Defendant did not call her or attempt to communicate with her after she left.

The judge also noted the couple did not have any children, and thus would not need to continue interacting as parents. The judge again emphasized that he found the parties' testimony equally credible. Only the photographs of plaintiff's injuries tipped the scales in her favor.

> Plaintiff, however, provided pictures corroborating her injuries, and because the [c]ourt had no reason to doubt her credibility or the credibility of the depictions in the photographs, the [c]ourt found she had been assaulted by him. In effect, these photographs made her slightly more credible than Defendant, at least with regard to those two instances.

The trial judge next directly addressed his decision to not issue an FRO. After recognizing he needed to consider the history of domestic violence between the parties, the judge stated:

> Here, the marriage lasted less than a year, and the unproven allegations of domestic violence listed in the Complaint would

A-4730-14T3

indicate that Defendant began abusing Plaintiff in December 2014, two months into their marriage. This means the unreported allegations of domestic violence brought before the [c]ourt in Plaintiff's Complaint comprise most if not all of the history of domestic violence between the parties; and these, with the exception of the two instances of assault, were found not credible. Significantly, there is no indication of a relationship between the parties preexisting their marriage and no allegations of domestic violence predating the marriage. There certainly is, however, evidence that the parties['] relationship ended when Plaintiff left the marital home. Consequently, due to the short nature of the marriage and the fact the Plaintiff was only able to establish two instances of domestic violence despite alleging many others, the history of domestic violence between the parties and the best interests of the victim did not dissuade the [c]ourt from its finding that a Final Restraining Order was not necessary to protect Plaintiff from future acts or threats of violence.

II

Plaintiff argues the trial judge misapplied our decision in Silver when he denied the FRO because he erroneously focused on defendant's post-TRO conduct and failed to consider the relevant statutory factors in N.J.S.A. 2C:25-29a(1) to —(6). Plaintiff argues the trial judge ignored or failed to properly consider the parties' history of domestic violence, N.J.S.A. 2C:25-29a(1), which included not only actual acts of physical violence by defendant, but threats that "he can hurt [plaintiff] whenever he feels like it." Plaintiff argues her decision to flee the

13

marital residence and take refuge in a women's shelter shows she was in fear of immediate danger. N.J.S.A. 2C:25-29a(2). Plaintiff states an FRO is clearly warranted under the second-prong in Silver because the trial judge found defendant physically assaulted plaintiff to stop her from leaving the residence. According to plaintiff, the issuance of an FRO is in her best interests, N.J.S.A. 2C:25-29a(4), because it will provide her with the legal means to prevent defendant from carrying out his threats to physically and psychologically harm her "whenever he feels like it."

Defendant argues the trial judge adequately considered the statutory factors in N.J.S.A. 2C:25-29a and correctly applied the two-prong analysis in Silver to conclude that permanent restraints were not needed in this case. Defendant argues the trial judge correctly considered defendant's conduct after plaintiff left the marital residence, which showed defendant did not attempt to contact plaintiff even when he did not know a TRO existed. Defendant also argues his post-TRO conduct supports the judge's conclusion that he does not constitute a continuing threat to plaintiff. Finally, defendant argues the trial judge correctly considered the brief duration of the marriage and the lack of children as factors militating against the issuance of an FRO. In light of these findings, defendant argues the record

14

supports the judge's refusal to issue final restraints and the judge properly exercised his discretionary authority under the two-prong analytical paradigm in Silver.

In Silver, we held that the judge at an FRO hearing must perform two tasks before granting final relief under the PDVA. Silver, supra, 387 N.J. Super. at 125. First, the judge must determine whether plaintiff proved, by a preponderance of the credible evidence, that defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a. Ibid. If the judge finds plaintiff did not meet this burden of proof, the court must dismiss the complaint. But if the court finds a defendant committed one or more of the predicate acts listed in N.J.S.A. 2C:25-19a, the judge must determine whether an FRO is needed to protect the victim. Id. at 126.

Here, the trial judge found defendant, a police officer, physically assaulted his wife on two separate occasions. Physical assault falls within the category of predicate offenses listed in N.J.S.A. 2C:25-19a that inherently and unambiguously involve the use of physical violence against a victim. A finding of domestic violence does not require actual violence. H.E.S., supra, 175 N.J. at 329. The Legislature's stated public policy, which guides the enforcement of the PDVA, specifically stressed that

the official response to domestic violence shall communicate the attitude that violent behavior will not be excused or tolerated, and shall make clear the fact that the existing criminal laws and civil remedies created under this act will be enforced <u>without regard to the fact that the violence grows out of a domestic situation</u>.

[<u>N.J.S.A.</u> 2C:25-18 (emphasis added).]

Consistent with these guiding principles, we held that

although [the] . . . determination [as to] . . . whether a domestic violence restraining order should be issued . . . <u>is most often perfunctory and self-evident</u>, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in <u>N.J.S.A.</u> 2C:25-29a(1) to -29a(6), to protect the victim from an immediate danger or to prevent further abuse.

[<u>Silver</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 127 (emphasis added).]

In <u>Silver</u>, the parties were in the midst of an acrimonious divorce, made even more rancorous by a battle for custody and supervised parenting time over the child of the marriage. <u>Id.</u> at 124. They each filed cross-complaints under the PDVA and testified that their relationship had been mired in a history of domestic violence. <u>Id.</u> at 115. The trial court found the defendant/mother physically assaulted the plaintiff/father and forcibly trespassed into his car. <u>Id.</u> at 126.

In an effort to provide a scholarly context to the thorny legal question before the panel, Judge Fall surveyed the

published opinions from this court in search of a clear answer to the following question: Despite finding that a defendant committed one of the predicate acts listed in N.J.S.A. 2C:25-19a, when may a court properly refuse to issue restraints? Id. at 126—28. As is the case with most questions involving the human condition, the answer depends on the facts. That being said, Judge Fall found a factor that consistently appeared in most of the cases that upheld the denial of restraints -- the predicate act did not involve physical violence. Id. at 122—25; 127—28.

Thus, courts may consider two key factors when determining whether to issue permanent restraints: (1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim. Here, the trial judge found the absence of children supported not issuing final restraints. We disagree. The Legislature intended "to assure the victims of domestic violence the maximum protection from abuse the law can provide[.]" S.Z. v. M.C., 417 N.J. Super. 622, 625 (App. Div. 2011) (quoting N.J.S.A. 2C:25-18). The Legislature defined "victim of domestic violence" to include:

> [A]ny person who is 18 years of age or older
> or who is an emancipated minor and who has
> been subjected to domestic violence by a
> spouse, former spouse, or any other person

who is a present household member or was at any time a household member. "Victim of domestic violence" also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

[N.J.S.A. 2C:25-19d.]

The fact plaintiff did not have children with defendant should not adversely affect her entitlement to permanent injunctive relief under the second-prong of Silver. Nothing in N.J.S.A. 2C:25-19d's text or the PDVA's underlying public policy found in N.J.S.A. 2C:25-18 suggests that the absence of children supports denying a victim of domestic violence the maximum protection from abuse the law can provide. See S.Z., supra, 417 N.J. Super. at 625—26 (providing examples where restraining orders were granted even though no children existed).

Conversely, courts should carefully consider both the presence of children in a household plagued by domestic violence and the parents' role in raising those children when they determine whether to issue final restraints against a defendant and whether to permit the defendant to interact with the plaintiff for the purposes of parenting. As the Legislature noted:

> [T]here is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is[,] therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.
>
> [N.J.S.A. 2C:25-18.]

Indeed, domestic violence cases involving parents of young children present particularly challenging considerations. Upon issuing an FRO in favor of an abuse victim who must interact with his or her abuser as a parent, a court must be particularly vigilant to not only enforce the PDVA, but also to fulfill its "parens patriae responsibility, which authorizes the court to intervene where it is necessary to prevent harm to a child." Segal v. Lynch, 413 N.J. Super. 171, 181 (App. Div.) (citing Fawzy v. Fawzy, 199 N.J. 456, 474-75 (2009)), certif. denied, 203 N.J. 96 (2010). But this consideration is not relevant here.

We next review the trial judge's consideration of defendant's conduct after plaintiff left the marital residence and the relative brief duration of the marriage as factors weighing against the issuance of an FRO. As we will explain, neither consideration is relevant when determining whether final restraints should have been issued under the second-prong of

Silver. As we noted earlier, the trial judge found in his Amplification of Decision that "the parties' relationship ended when Plaintiff left the marital home."

These findings are based more on speculation than evidence in the record. There is no rational basis for the judge to use the duration of the marriage as a reliable predictor of defendant's future conduct with plaintiff, who remains his wife until the marriage is legally dissolved. The duration of the marriage is not a relevant factor under N.J.S.A. 2C:25-29a(1) to —(6). Moreover, in the course of his analysis, the judge minimized one of the principal concerns that drove our analysis in Silver: Whether the predicate offense involved a violent act. Silver, supra, 387 N.J. Super. at 127. Indeed, in Silver, we reversed the trial court's decision to dismiss the plaintiff's complaint because the record showed the defendant committed a trespass which "was accompanied by an act of violence in the form of an assault." Ibid.

The second-prong of Silver requires the trial court to evaluate the factors set forth in N.J.S.A. 2C:25-29a(1) to -(6) to determine whether an FRO should be issued. This standard exists to protect the victim from an immediate danger or to prevent further abuse. Ibid. See also N.J.S.A. 2C:25-29b. When the predicate act is an offense that inherently involves

the use of physical force and violence, the decision to issue an FRO "is most often perfunctory and self-evident." Silver, supra, 387 N.J. Super. at 127. But even when the predicate act does not involve physical violence, the trial court must still evaluate the factors in N.J.S.A. 2C:25-29a(1) to —(6) to determine whether an FRO is warranted to protect the victim from an immediate danger or to prevent further abuse.

We have noted that "[i]t is clear that the Legislature did not intend that the commission of any one of these acts automatically mandates the issuance of a domestic violence order." The most often cited potential misuse of the PDVA involves the predicate offense of harassment. L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533—34 (App. Div. 2011). Although a defendant might not use direct physical violence when he or she engages in the predicate acts of harassment, N.J.S.A. 2C:33-4, or stalking, N.J.S.A. 2C:12-10,[9] these acts can cause great

---

[9] As construed by our Supreme Court,

> the statutory offense reaches and punishes a person who engages in a course of stalking conduct even if the person is operating under the motivation of an obsessed and disturbed love that purportedly obscures appreciation of the terror that his or her conduct would reasonably cause to the victimized person.
>
> [State v. Gandhi, 201 N.J. 161, 170 (2010).]

A-4730-14T3

emotional harm and psychological trauma. Thus, we must never lose sight of Justice O'Hern's admonition that "there is no such thing as an act of domestic violence that is not serious." Brennan v. Orban, 145 N.J. 282, 298 (1996).

Guided by these principles, we return to the facts of this case. The trial court found defendant physically assaulted plaintiff on two separate occasions in a period of less than three weeks. Although both assaults involved physical violence and left plaintiff emotionally shaken and visibly bruised, the second physical assault was more egregious because defendant committed it to prevent plaintiff from leaving the marital residence and seeking refuge in a women's shelter. Applying the standards in Silver to these findings, we are satisfied plaintiff has established the need for an FRO as a matter of law.

We reach this conclusion based on: (1) defendant's history of domestic violence, which included both physical violence and threats of violence, N.J.S.A. 2C:25-29a(1); (2) plaintiff's decision to leave the marital residence and defendant's acts of physical aggression to stop her, which established "the existence of immediate danger," N.J.S.A. 2C:25-29a(2); and (3) the fact that, under these circumstances, the issuance of final restraints is indisputably in plaintiff's best interests,

N.J.S.A. 2C:25-29a(4). In short, this is the type of case for which the issuance of final restraints should have been axiomatic or, as Judge Fall stated, "perfunctory and self-evident." Silver, supra, 387 N.J. Super. at 127.

III

We cannot conclude our review of this appeal without addressing defendant's allegation that he was not served with the TRO. When the Legislature adopted the PDVA, it made the Judiciary responsible for "protect[ing] victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public." N.J.S.A. 2C:25-18.

The Judiciary must also enforce the procedural mechanisms established to ensure the expedited review of domestic violence complaints and the issuance of emergent orders, which give victims of domestic abuse temporary protection from their abusers. The Judiciary must carry out these measures in accordance with the basic principle of due process, guaranteed by both the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, § 1, and Article I, paragraph 1 of the New Jersey Constitution. See H.E.S., supra,

175 N.J. at 321—22 (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)) ("At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'").

The PDVA imposes on the Judiciary the following specific obligations:

> An order granting emergency relief, together with the complaint or complaints, shall immediately be forwarded to the appropriate law enforcement agency for service on the defendant, and to the police of the municipality in which the plaintiff resides or is sheltered, and shall immediately be served upon the defendant by the police, except that an order issued during regular court hours may be forwarded to the sheriff for immediate service upon the defendant in accordance with the Rules of Court. If personal service cannot be effected upon the defendant, the court may order other appropriate substituted service. At no time shall the plaintiff be asked or required to serve any order on the defendant.
>
> [N.J.S.A. 2C:25-28(l).]

Further, the July 2004 updated version of the New Jersey Domestic Violence Procedures Manual[10] (hereinafter the "Manual")

---

[10] Since it was jointly adopted by our Supreme Court and the State Attorney General in 1991, the revised editions of the New Jersey Domestic Violence Procedures Manual "provide[] procedural guidance for law enforcement officials, judges and judiciary staff in implementing the Prevention of Domestic Violence Act." Supreme Court of N.J. & Attorney Gen. of N.J., State of New

(continued)

provides specific, detailed procedures for serving a domestic violence complaint, a TRO, and an FRO. Here, plaintiff filed her domestic violence complaint and obtained the TRO in the Family Part of Middlesex County. Defendant resides in the City of Newark in Essex County and serves as a police officer in the Newark Police Department. Section 4.7 of the Manual describes the specific steps Judiciary staff members must follow to serve a defendant who resides in a different county:

> 4.7.1 When a temporary or final restraining order is issued that requires service outside the issuing county, <u>the restraining order must immediately be brought or faxed to the Sheriff's Department or other designated law enforcement agency in the issuing county</u>.
>
> A. The Sheriff's Department or other designated law enforcement agency in the issuing county must bring or fax the order and related documents to the sheriff's department or other designated law enforcement agency in the county of the defendant's residence or business.
>
> B. The Sheriff's Department or other designated law enforcement agency in the receiving county, pursuant to local policy, will either:
> (1) Execute service on the defendant, or
>
> (2) Immediately bring or fax the order and related documents to the sheriff or other

---

(continued)
<u>Jersey Domestic Violence Procedures Manual</u> (Oct. 9, 2008), <u>available                                                      at</u>
http://www.judiciary.state.nj.us/family/dvprcman.pdf.

A-4730-14T3

designated law enforcement agency in the municipality in which the defendant resides or works so that it can execute service accordingly.

C. <u>The return of service should then be faxed back to the sheriff's department or other designated law enforcement agency in the issuing county, which in turn must immediately deliver or fax the return of service to the Family Division in the issuing county</u>.

4.7.2 Once service on the defendant is attempted, successfully or unsuccessfully, <u>the return of service portion of the TRO must be filled out by the sheriff's department or other designated law enforcement agency and immediately faxed or returned to the Family Division prior to the scheduled final hearing date</u>.[11]

---

[11] The Manual makes clear that its Judiciary sections "reflect[] court policies existing as of the date of its preparation[.]" However,

> in the event there is a conflict between the Manual and any statement of policy issued by the Supreme Court, the Judicial Council or the Administrative Director of the Courts, that statement of policy, rather than the Manual, will be controlling. Other than in that circumstance however, <u>the Judiciary portion of this Manual is binding on court staff</u>. This Manual is not intended to change any statute or court rule, and in the event a statute or court rule differs from this manual, the statute or rule will control.
>
> [Supreme Court of N.J. & Attorney Gen. of N.J., <u>supra</u>, n. 10 (emphasis added).]

N.J.S.A. 2C:25-28(n) also requires that notice of the TRO "shall be sent by the clerk of the court or other person designated by the court to the appropriate chiefs of police, members of the State Police and any other appropriate law enforcement agency or court." Here, defendant alleged he was not served with plaintiff's complaint or the TRO. He also alleged that he first learned the TRO existed when an anonymous male called him three days before the scheduled FRO hearing. Defendant claimed the caller used a telephone with a "732" area code. Pursuant to N.J.R.E. 201(b), we take judicial notice that the area code "732" includes Middlesex County.

Because defendant was a Newark Police Officer when the TRO was issued and, as far as we know continues to be employed in this capacity, the Essex County Sheriff's Department or the Newark Police Department should have had no difficulty serving him with the domestic violence complaint and the TRO. Yet despite the clear statutory and regulatory mandates, defendant was not served with the domestic violence complaint or the TRO. Moreover, contrary to Subsection 4.7.2 of the Manual, "the return of service portion of the TRO [was not] filled out by the sheriff's department or other designated law enforcement agency and immediately faxed or returned to the Family Division prior to the scheduled final hearing date." Even more troubling given

defendant's status as a police officer, "the clerk of the court or other person designated by the court" did not notify the Chief of Police of the Newark Police Department of the existence of the TRO, as required by N.J.S.A. 2C:25-28(n).

Under these circumstances, it would have been entirely reasonable for defendant, who was represented by counsel, to have requested that the trial court adjourn the FRO hearing to enable him to prepare his defense. See H.E.S., supra, 175 N.J. at 323 (citing H.E.S. v. J.C.S., 349 N.J. Super. 332, 342—43 (App. Div. 2002)). Defendant did not request an adjournment. Notwithstanding defendant's failure to object, the trial judge had an independent duty to determine the cause of this systematic failure. Both the PDVA and the Manual, which the Supreme Court adopted to implement the PDVA, impose specific obligations on the Judiciary to ensure that victims of domestic violence are protected from abuse. These sources of legal authority also impose a concomitant responsibility on the Judiciary to ensure that individuals charged with committing domestic violence offenses are treated fairly and receive the full panoply of due process rights guaranteed by our federal and State constitutions.

"The temporary restraining order's purpose is to provide the domestic violence victim with a buffer zone of safety and

shield the victim from the risk of contact with an abuser." State v. Dispoto, 189 N.J. 108, 120 (2007). It greatly concerns us that plaintiff was denied this protection because the Judiciary failed to perform a material clerical task that the Legislature expressly entrusted it to perform. See N.J.S.A. 2C:25-28(l) and (n).

We cannot overlook that defendant's status as a police officer should have made service of the complaint and the TRO a relatively straightforward task to accomplish. Judges must preserve the integrity of the judicial process, even from the appearance of impropriety. Kane Props. v. City of Hoboken, 214 N.J. 199, 221 (2013) (citing In re Cipriano, 68 N.J. 398, 403 (1975)). Anything that may give a reasonable, fully informed person cause to doubt or question the impartiality of the judicial proceeding threatens the Judiciary's core values of independence, integrity, fairness, and quality of service. See N.J. Judiciary, Statement of Core Values, New Jersey Courts (2016), http://www.judiciary.state.nj.us/mission.html. Thus, as a matter of public policy, the trial court should not have considered the Judiciary's unexplained failure to carry out its statutory responsibilities under N.J.S.A. 2C:25-28(l) and (n) as a factor in favor of denying plaintiff the protections she was entitled to receive under the PDVA.

IV

The trial court's order denying plaintiff an FRO under the PDVA, despite finding defendant physically assaulted plaintiff on two separate occasions within a three-week period, is reversed. Applying the two-prong standard we first articulated in <u>Silver</u>, we hold that under the uncontested material facts of this case, plaintiff was entitled to an FRO as a matter of law. We also hold that, notwithstanding defendant's failure to object, the trial judge had an independent duty under <u>N.J.S.A.</u> 2C:25-28(l) and (n) to determine the reason defendant was not served with a copy of plaintiff's complaint and TRO.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION