# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3366-20

J.D.,

    Plaintiff-Respondent,

v.

R.J.C.,

    Defendant-Appellant.

_____

Submitted June 9, 2022 – Decided June 23, 2022

Before Judges Haas and Alvarez.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FV-05-0387-18.

Julia C. Delia, attorney for appellant.

Coalition Against Rape & Abuse Law Project, attorneys for respondent (Jane Molt, on the brief).

PER CURIAM

    After a hearing on defendant R.J.C.'s motion to vacate a domestic violence final restraining order (FRO) due to lack of proper service, a Family Part judge

denied the application as meritless and untimely. See Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. For the reasons stated by Judge Christine Smith, we affirm. We add some brief comments.

During the hearing, the complainant J.D. testified that a temporary restraining order (TRO) was issued against defendant on May 4, 2018. The TRO states that a Lower Township Police Officer could not initially serve defendant. Not included in the record is a return of service in which a different officer, James Mathis, states he served defendant "telephonically" at 3:07 p.m. on May 6, 2018. Defendant resided in Delaware and claims he was homeless and without a phone at the time.

Plaintiff received a text message from defendant on May 9, 2018, at 6:00 p.m. in which he says, among other things, "violate me, I have 250 to bail out and pay for the first violation." She also showed the judge a May 19, 2018 text message from defendant in which he says, among other things, "you and your man can have an FRO." The parties have previously obtained restraints but dissolved them. Although defendant does not dispute sending the messages, he flatly denies having had notice of the TRO or the FRO hearing date.[1]

_____

[1] At the FRO hearing at which defendant failed to appear, he was also found guilty of contempt of the TRO for harassing text messages. At that juncture, as

2

Defendant testified he first learned of the restraining order nearly a year later when he attempted to file papers at the courthouse regarding visitation with the parties' son. The FRO required defendant to complete a risk assessment before visiting with his child. A visitation hearing was scheduled, but only plaintiff appeared.

In November 2020, some two and one-half years after entry of the FRO, defendant filed a <u>Carfagno</u> motion, and raised the issue of improper service during a scheduling conference. <u>See</u> <u>Carfagno v. Carfagno</u>, 288 N.J. Super. 424 (Ch. Div. 1985). Defendant appeals the order issued from a June 15, 2021 hearing.

In rendering her detailed and thorough findings, the judge found plaintiff credible and defendant incredible. The judge found plaintiff "very believable," and noted defendant must have known about the order at least one year later when he sought visitation. He failed to appear at the hearing. Two years after entry of the order, he reappeared and alleged faulty service.

The judge acknowledged defendant may not have gotten mail for months because he had no fixed address, but did not find the balance of his testimony

---

reflected in the transcript, it was known that defendant was homeless, that his parents had a restraining order against him, and that he had contacted plaintiff asking for gasoline money.

A-3366-20

credible. She concluded he knew about the restraining order but chose not to act until he decided to contact his child. The judge described defendant's testimony as "somewhat not reasonable."

While the judge was giving her decision, defendant became disruptive. The judge had to interrupt the Zoom proceedings so defendant and his attorney could confer in a "breakout room." She noted that although defendant claimed he had no phone in the months of April, May, and June of 2018, he did not dispute that he texted plaintiff and left her voicemails played at the hearing. Thus, the judge concluded that defendant had actual notice of the TRO and the hearing date.

The judge also took into account defendant's failure to appear at the visitation hearing he requested. It was nearly two years before he obtained counsel to seek dismissal of the restraining order. Defendant should have challenged the FRO when he filed to obtain visitation. Instead, he elected to do nothing and waited over a year. Thus, the judge denied defendant's application because it was untimely and he had actual notice of the FRO hearing.

Now on appeal, defendant claims the court committed the following errors:

A-3366-20

POINT I

THE TRIAL COURT ERRED IN FINDING SERVICE OF THE [TRO] WAS PROPER BECAUSE THE PLAINTIFF DID NOT DEMONSTRATE THAT LAW ENFORCEMENT ATTEMPTED TO EFFECTUATE SERVICE NOR DID SHE DEMONSTRATE A DUE DILIGENT ATTEMPT TO EFFECTUATE SERVICE.

POINT II

EVEN IF THE APPROPRIATE LAW ENFORCEMENT AGENCY DID EFFECTUATE SERVICE, THE COURT ABUSED ITS DISCRETION. (ISSUE NOT RAISED).

It has long been the law that the factual findings of the Family Part are entitled to particular deference in view of its "special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). Credibility is crucial, and the trial court's conclusions on that score are to be accepted on appeal unless clearly lacking in reasonable support. N.J. Div. of Youth & Fam. Servs. v. F.M., 375 N.J. Super. 235, 259 (App. Div. 2005) (citing In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999)).

According to the PDVA:

An order granting emergency relief, together with the complaint or complaints, shall immediately be forwarded to the appropriate law enforcement agency for service on the defendant . . . .  If personal service cannot be effected upon the defendant, the court may order other appropriate substituted service.  At no time

5

A-3366-20

shall the plaintiff be asked or required to serve any order on the defendant.

[N.J.S.A. 2C:25-28(l).]

"[T]he court may relieve a party or the party's legal representative from a final judgment or order for . . . mistake, inadvertence, surprise, or excusable neglect . . . or . . . any other reason justifying relief from the operation of the judgment or order." R. 4:50-1(a), (f). "The motion shall be made within a reasonable time, and [if for mistake, inadvertence, surprise, or excusable neglect,] not more than one year after the judgment, order or proceeding was entered or taken." R. 4:50-2. "Not every defect in service of process constitutes a denial of due process qualifying defendant for relief from the [] judgment." T.M.S. v. W.C.P., 450 N.J. Super. 499, 507 (App. Div. 2017) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 5.4.2 on R. 4:50-1(d) (2017)).

In A.M.C. v. P.B., the trial judge denied an FRO application, noting the defendant was never served with a copy of the TRO. 447 N.J. Super. 402, 411 (App. Div. 2016). Because the defendant "was completely unaware" of the TRO, the judge inferred the parties did not have "any continuing association" and therefore an FRO was unnecessary. Ibid. Notably, the defendant was himself a police officer. Id. at 421.

We reversed, noting it should have been relatively easy for police to serve a TRO on a fellow officer. Ibid. While acknowledging the need to ensure domestic violence defendants receive due process, it was "greatly concern[ing] . . . that plaintiff was denied [the] protection [of an FRO] because the Judiciary failed to perform a material clerical task that the Legislature expressly entrusted it to perform." Id. at 422. Therefore "as a matter of public policy, the trial court should not have considered the Judiciary's unexplained failure to carry out its statutory responsibilities . . . as a factor in favor of denying plaintiff the protections she was entitled to receive under the PDVA." Ibid. A similar logic applies here.

Furthermore, defendant offers no reason for us to ignore the judge's amply supported findings. He fails to explain his clear references to a TRO in his communications with plaintiff before the final hearing. Nor does he explain his years-long delay in challenging the order or his failure to do so in the visitation proceedings he initiated, then abandoned.

Defendant is unquestionably entitled to due process regardless of the nature of the complaint. But he has failed to establish that he did not have actual notice of the TRO and of the FRO hearing date. His failure to appear for the FRO hearing alone does not prove a failure of service—he certainly knew the

date of the visitation hearing he requested but abandoned. The time to vacate the order has long since passed. In this case, telephonic service sufficed. The judge did not abuse her discretion in concluding defendant had actual notice, or in refusing to vacate the FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3366-20