# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0650-24

Y.B.M.,[1]

    Plaintiff-Respondent,

v.

O.G.,

    Defendant-Appellant.

_____

> Submitted September 18, 2025 – Decided October 22, 2025
>
> Before Judges Marczyk and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0270-25.
>
> Roberts & Teeter, LLC, attorneys for appellant (Michael B. Roberts, on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. <u>R.</u> 1:38-3(d)(10).

Defendant O.G. appeals from the October 10, 2024 final restraining order (FRO) entered against him in favor of plaintiff Y.B.M. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. For the reasons that follow, we vacate the FRO, reinstate the temporary restraining order (TRO), and remand for further proceedings.

I.

The record on appeal is limited. While defendant filed the transcript of the FRO hearing, he omitted the initial TRO and the complete amended TRO. Accordingly, we derive these essential facts from the sparse record.

At the hearing, plaintiff appeared self-represented. Defendant was represented by counsel. The parties had a three-year dating relationship, which ended around August 12, 2024. Each party alleged the other subsequently entered a relationship with another individual. On August 27 at 11:12 p.m., defendant went to plaintiff's home because she had stopped responding to his calls. As defendant arrived at plaintiff's home, she was exiting a car driven by a male friend in front of her home. Defendant began to verbally confront plaintiff and called her a "whore." He also grabbed plaintiff's shirt, forcibly "yanked" her out of the car, and continued "yelling" at her. Plaintiff

A-0650-24

subsequently drove away to "calm down and feel better." She produced video footage from that night; however, the altercation was not captured on video.

Plaintiff described other prior incidents of domestic violence perpetrated by defendant. She recounted defendant threatening her with knives and an incident involving a beer bottle. She did not testify about the specific locations or dates of these incidents. Plaintiff further recalled that, on April 24, 2024, defendant choked her until she lost consciousness. She produced several photographs depicting redness around her neck after she was choked, which supported her testimony and were admitted into evidence.

Plaintiff testified she sought an FRO because her "life ha[d] been in danger a few times" during her relationship with defendant. She further stated she was "afraid that one day he [was] going to be under the influence of alcohol and do something to [her]."

Plaintiff's friend, K.S., testified plaintiff told her about the choking incident, although K.S. was unable to recall the date. K.S. observed scratch marks on plaintiff's neck. On cross-examination, K.S. acknowledged she did not witness defendant injure plaintiff. However, when K.S. visited plaintiff, she was "always scared [and] always worried." According to K.S., plaintiff stayed

A-0650-24

at K.S.'s home because she was "too scared" to return to her own home, as she was "terrified" of defendant.

Defendant testified on his own behalf, describing his relationship with plaintiff as contentious after their initial interaction on Facebook. He claimed their relationship had not ended; she simply blocked his calls and messages without providing him with a reason.

Defendant stated on the night of August 27, he went to plaintiff's home in an effort to "try to fix things" because she had not responded to any of his calls or text messages. He claimed he found her outside at approximately 10:10 p.m. He further stated they had a conversation while he was standing in front of his car, and she was standing near the sidewalk with a male friend. This friend, who identified himself as plaintiff's boyfriend, became angry and confrontational with defendant. Defendant subsequently left and drove away. He denied touching or calling plaintiff names.

In considering the parties' testimony and evidence, the Family Part judge rendered an oral decision on the record. The judge found both plaintiff and K.S. credible because they "did not avoid questions[,] . . . were willing to answer questions[,] and . . . provided good explanations." Overall, there were no contradictions in their testimony.

A-0650-24

In contrast, the judge found defendant's credibility was "undermined" by the circumstances that led to plaintiff obtaining a TRO. He further found there were contradictions in defendant's testimony, which he deemed "not believable" and lacking in straightforward answers.

The judge cited Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) and N.J.S.A. 2C:12-1(a), the statute defining assault. He concluded plaintiff had met her burden of proof and proved assault. He found defendant's grabbing and pulling on plaintiff's shirt constituted an attempt to cause her bodily injury. The judge further found defendant knowingly and purposefully grabbed plaintiff's shirt. The judge noted plaintiff was "clearly scared" of defendant.

## II.

On appeal, defendant argues a single issue for our review. He argues there was an insufficient basis for the entry of the FRO. He contends the judge's findings were contrary to the weight of the evidence, and relied, in part, on evidence that was not admitted during the hearing. We are persuaded by defendant's arguments.

Our scope of review of Family Part orders is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. Cesare

A-0650-24

v. Cesare, 154 N.J. 394, 413 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We will not disturb a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review those conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

"In adjudicating a domestic violence case, the trial judge has a 'two-fold' task." J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (quoting Silver, 387 N.J. Super. at 125). "The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a)." Ibid.

6

If plaintiff proves a predicate act of domestic violence was committed, the second inquiry is whether the judge should enter an FRO "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. "The second prong of Silver requires the [judge] to evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -(6) to determine whether an FRO should be issued." A.M.C. v. P.B., 447 N.J. Super. 402, 416 (App. Div. 2016).

Here, plaintiff alleged and testified to a prior history of domestic violence, as well as the verbal and physical confrontation with defendant. We are satisfied the judge properly concluded plaintiff established defendant committed simple assault.

After finding defendant committed the predicate act, the judge was required to "determine whether a domestic violence restraining order [was] necessary to protect plaintiff from immediate danger or further acts of domestic violence." Silver, 387 N.J. Super at 128. However, the judge did not evaluate the statutory factors and made no findings as to whether an FRO was necessary to provide protection for plaintiff "from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)). Consequently, we are constrained to vacate the FRO, reinstate the TRO, and remand for the judge, to

7

determine whether an FRO is necessary under <u>Silver</u> and the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -(6).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0650-24