# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0626-24

N.R.,[1]

     Plaintiff-Appellant,

v.

S.G.,

     Defendant-Respondent.

_____

Submitted November 6, 2025 – Decided January 20, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0206-23.

Hovanec & Divito, LLC, attorneys for appellant (Marisa Lepore Hovanec, of counsel and on the briefs).

Wilentz, Goldman & Spitzer, PA, attorneys for respondent (Darren M. Gelber, of counsel and on the brief).

---

[1] We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and protect the confidentiality of domestic violence victims, R. 1:38-3(d)(10).

PER CURIAM

Plaintiff N.R. appeals from a September 16, 2024 order dismissing her domestic violence complaint and denying her request for a final restraining order (FRO) against her husband, S.G. Plaintiff filed a complaint against defendant and was granted a temporary restraining order (TRO) after an incident where defendant allegedly hit plaintiff's breast with a soda bottle. Additionally, plaintiff's complaint recounted several other instances of physical violence between 2019 and 2021.

Although the trial court credited plaintiff's testimony and found the predicate acts of assault and harassment had been demonstrated, it concluded an FRO was unnecessary because plaintiff did not fear for her safety. It based this conclusion on text messages plaintiff sent to defendant after the incident, which demonstrated anger and jealousy, but not fear.

We conclude the trial court erred in failing to issue an FRO as lack of fear is only an additional, unenumerated factor a court must consider pursuant to the second prong of Silver v. Silver, 387 N.J. Super. 112, 125-128 (2006), particularly where the predicate act of simple assault has been proven. Accordingly, we reverse and remand for the entry of a final restraining order consistent with this opinion.

A-0626-24

I.

Plaintiff and defendant married in 2019. At the time of the alleged incidents in July 2024, plaintiff, who had been treated for breast cancer, lived separately in a nursing home. On July 25, 2024, plaintiff filed a domestic-violence complaint against defendant and was granted a TRO. She thereafter filed an amended complaint with additional allegations of domestic violence. Both parties testified, and several exhibits were admitted into evidence at the FRO hearing.

Plaintiff stated she needed an FRO because "I'm scared for my life . . . for my protection." Plaintiff testified defendant assaulted her at the nursing home on July 16, 2024: "[H]e came to the nursing home when I was sitting . . . and I was sleeping that day, and he came, he br[ought] pizza and soda and he hit me with the back of soda in my breasts." Plaintiff also stated the assault left visible marks and a photograph of the injury was admitted into evidence.

Plaintiff testified that, after the assault on July 16, defendant returned to the nursing home despite her objections but was prevented by staff from entering her room: "The social worker and the nurses in the facility they stop him to coming inside my room. He was trying to come inside the room." In the following days, defendant repeatedly called and texted plaintiff.

A-0626-24

Additionally, plaintiff recounted several other instances of physical violence since the parties were married in 2019. The first incident, from September 2019, involved physical violence against plaintiff and her cat:

> "He told me to show him that I love him, he want to kill my cats. And then sir, he beats me. He hits me in my arm in September 5, 2019. Again, sir, in September 5, he hits my cats in her eye and he damage her right eye. . . . He hits her in her eye and he damage her eye. She lost her vision. And I try to defend my cats and he hits me. . . .
> And he took me to the bathroom and he pull me in the floor and he keep kicking me and beating me and he step in my foot, in my leg and trying to break my leg."

Plaintiff provided photographs of her and her cat's injuries, which were taken on September 5, 2019.

Plaintiff also testified about several other instances of physical violence, and photographs of the injuries were admitted into evidence. She claimed defendant kicked her legs twice in 2019, leaving visible bruising. Additionally, plaintiff alleged defendant punched her in the eye in late 2019. Plaintiff also stated defendant punched her left breast while they were in the car and delayed taking her to the doctor in October of 2020, despite swelling and bleeding in her breast.

Plaintiff testified that, in 2021, defendant "took [her] to the casino and then he [was] having arguments with me and then he took me to the car and he

4

took his shoes off and he keeps hitting me with his shoes." Plaintiff testified defendant "punch[ed] me in my nose and my face" in March 2021, leaving her nose bleeding. Finally, plaintiff alleged defendant, after her breast cancer surgery in 2021, removed her catheter, which left her bleeding and in pain.

Defendant denied hitting plaintiff with a soda bottle on July 16. Defendant also denied hitting plaintiff's cat. And he claimed plaintiff's bloody nose and bruised leg were caused by plaintiff's past surgery to her nose and by plaintiff's falling. Additionally, defendant denied hitting plaintiff with his shoe and punching her breast. Regarding the catheter, defendant stated: "[T]he nurse told me that you have to disconnect it and squeeze out the blood from time to time and she never used to take the blood out herself. I was the one who had to do it . . . ."

The court found plaintiff credible and, based on the July 16, 2024 incident in which defendant hit plaintiff with a soda bottle, it found plaintiff had proven the predicate acts of harassment and assault by a preponderance of the evidence. The court also found the prior instances of physical violence from 2019 to 2021 had been "demonstrated for what it's worth." But, relying on plaintiff's texts to defendant after the July 16 incident, it concluded an FRO was not necessary because plaintiff no longer feared violence from defendant. It stated:

I find D-10 [the text messages] to be very, very probative as an exhibit. And while I find that there was an occurrence on July 16th, 2024, the TRO is applied for on July 25th, alleging that date and July 23rd. The [c]ourt finds very probative the [text] exchanges between the plaintiff and the defendant in the days right before the event of July 23rd and then right up until the time that the TRO was applied for. It is clear to the [c]ourt that the plaintiff is furious with the defendant.

The subject matter of her fury has to do with her not getting citizenship, threats of divorce, jealousy over her husband's infidelity and having a girlfriend, attempts to get money loaded into a debit or credit card for her to make purchases, claiming to the defendant that she has American men that are interested in her, undoubtedly to counter balance the jealousy that she feels over his girlfriend and some of the language calling the defendant a motherfucker and accusing him of being with his bitch which is for the girlfriend all the while complaining that she doesn't have what she wants to eat in the nursing home and the defendant responds by saying what do you want to eat, what can I bring you? I'm going to bring you pizza and she finally says no.

On the issue of <u>Silver versus Silver</u> prong two, I find that the parties start or they end exactly where they start, in equipoise. Any thought that the plaintiff was scared and needed protection and was scared for her life was ameliorated by that text exchange which was lengthy and over several days. In the [c]ourt's opinion the second prong of <u>Silver</u> has not been met by a preponderance of the believable and credible evidence before the [c]ourt.

The court dismissed plaintiff's complaint.

A-0626-24

II.

"Our review of an FRO is generally limited." T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). "We accord substantial deference to the Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Consequently, findings by a court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

However, we do not accord such deference to the trial court's legal conclusions, which we review de novo. C.C. v. J.A.H., 463 N.J. Super. 419, 428-29 (App. Div. 2020). Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)) (internal quotation marks omitted); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v.

7

M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of an FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and plaintiff's lack of fear).

When determining whether to issue an FRO pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35 the Family Part is required to make two distinct determinations. Silver, 387 N.J. Super. at 125-27 (App. Div. 2006). First, the trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. Super. at 322.

The second prong of Silver requires an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (a)(7):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse.

Effective January 8, 2024, the PDVA was amended to include coercive control among the statutory factors courts must consider when determining whether to issue an FRO. N.J.S.A. 2C:25-29(a)(7). Coercive control is not among the predicate acts enumerated in the PDVA; rather, it is analyzed as part of the prior history pursuant to the second prong of Silver. Coercive control may include, but shall not be limited to:

(a) isolating the person from friends, relatives, transportation, medical care, or other source of support;

(b) depriving the person of basic necessities;

(c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;

(d) compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;

9

(e) threatening to make or making baseless reports to the police, courts, the Division of Child Protection and Permanency (DCPP) within the Department of Children and Families, the Board of Social Services, Immigration and Customs Enforcement (ICE), or other parties;

(f) threatening to harm or kill the individual's relative or pet;

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or

(h) any other factors or circumstances that the court deems relevant or material.

[Ibid.]

"If the court finds that one or more factors of coercive control are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion." Ibid.

In determining whether an FRO should issue pursuant to the second prong, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29a(1) to -29a(6) [now (7)], to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

When the predicate act involves physical force and violence, "the risk of harm is so great that the inquiry can be perfunctory." J.D., 207 N.J. at 488. In these cases, "the decision to issue an FRO 'is most often . . . self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. at 127). In A.M.C., the trial court denied the plaintiff an FRO despite concluding that her "husband . . . physically assaulted her on two separate occasions over a three-week period." 447 N.J. Super. at 405, 417-18. We reversed, concluding there was a history of domestic abuse and an immediate danger to the plaintiff. Id. at 418 (citing N.J.S.A. 2C:25-29(a)(1) to (2)). We clarified courts may consider two key factors when determining whether to deny an FRO pursuant to the second prong of Silver: "(1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim." Id. at 414.

Likewise here, the long history of physical assaults, which the court found credible, and the demonstrated past history of coercive control by defendant render the need for an FRO axiomatic. Regardless of the motive that drives a victim of domestic violence to finally seek a restraining order, the decision as to whether to grant one should be made upon analysis of the factors and a

11

determination as to whether an FRO is necessary to prevent immediate danger or to prevent further abuse.

The trial court erred in concluding an FRO was unnecessary "to protect . . . [plaintiff] from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. The court credited plaintiff's testimony and found that the predicate acts of assault and harassment, based on defendant's hitting plaintiff's breast with a soda bottle, had been established. Moreover, the court found that several past instances of physical violence between 2019 and 2021 had been demonstrated. Her testimony detailed a history of abuse, coercive control by defendant, and a risk of further abuse. In addition to the predicate act of assault on July 16, 2024, there were eight instances of physical violence between 2019 and 2021. Thus, this is a case in which the necessity of an FRO should have been "perfunctory and self-evident." Silver, 387 N.J. Super. at 127.

In concluding otherwise, the trial court placed great weight on the texts plaintiff sent to defendant in the days leading up to the issuance of the TRO. It concluded: "Any thought that the plaintiff was scared and needed protection and was scared for her life was ameliorated by that text exchange which was lengthy and over several days." By narrowly focusing on plaintiff's subjective sense of fear, the court ignored the proper standard: whether, considering the N.J.S.A. 2C:25-29(a) factors, an FRO is necessary "to protect the victim from

an immediate danger or to prevent further abuse." <u>Silver</u>, 387 N.J. Super. at 127. In cases involving past physical violence, and where the predicate act of physical violence has been proven, fear is not the determinative factor. <u>See</u> <u>A.M.C.</u>, 447 N.J. Super. at 418. Indeed, we can envision situations where, because a victim suffers from intimate partner violence, the victim would display no evidence of fear; but that would not render the victim safe or the defendant any less of a batterer.

Moreover, to the extent fear is relevant, the test is whether an objective plaintiff would be in fear. <u>Cf.</u> <u>Carfagno v. Carfagno</u>, 288 N.J. Super. 424, 437 (Ch. Div. 1995) (concluding only objective fear is considered when considering whether to dissolve FRO). Otherwise, a plaintiff who is in immediate danger may be denied an FRO simply because he or she is subjectively unafraid of their abuser.

Reversed and remanded for entry of a final restraining order in favor of N.R. against defendant, S.G. The TRO dated July 25, 2024, is reinstated until replaced with the FRO. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division