# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0691-17T3

K.M.,

     Plaintiff-Appellant,

v.

M.D.,

     Defendant-Respondent.

_____

> Argued January 29, 2019 – Decided May 23, 2019
>
> Before Judges Yannotti and Rothstadt.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-3707-17.
>
> K.M., appellant, argued the cause pro se.
>
> Michael D'Alessio, Jr. argued the cause for respondent.

PER CURIAM

     Plaintiff K.M. appeals from the Family Part's July 31, 2017 order dismissing his domestic violence complaint that he filed against his estranged

wife, defendant, M.D.[1]  The trial court judge initially determined that defendant committed the criminal act of stalking, N.J.S.A. 2C:12-10, a predicate offense under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-19(a), by installing a GPS tracking device on plaintiff's vehicle.  However, he dismissed plaintiff's complaint because he also found that plaintiff failed to prove under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), that a final restraining order (FRO) was necessary to prevent any harm to him.  On appeal, plaintiff argues that the judge's decision should be reversed because the judge misapplied Silver.  We disagree and affirm, substantially for the reasons expressed by Judge Bahir Kamil in his comprehensive oral decision placed on the record on July 31, 2017.

At the time of their trial, the parties had been married for ten years, had one child, a daughter, and were in the middle of a pending contentious divorce that plaintiff filed in 2013.  It was undisputed that in January 2016, defendant purchased a GPS tracking device and placed it on plaintiff's truck without his knowledge.  According to defendant, she did so to monitor their daughter's location when she was with plaintiff.

---

[1]  In this opinion, we refer to the parties and others by their initials, to protect their identities.

A-0691-17T3

In May 2017, plaintiff discovered the tracking device. On June 27, 2017, he filed his complaint under the PDVA for a restraining order against defendant and alleged that she committed an act of stalking as the predicate offense. Based on his complaint, a Family Part judge issued a temporary restraining order (TRO) that was served on defendant the same day.

In his complaint, in addition to alleging his discovery of the tracking device, plaintiff claimed that defendant admitted that she came to his residence uninvited and, without his knowledge, "took their daughter to the beach on his visitation weekend" and "call[ed] him degrading names, ma[de] insulting comments, curse[d][,] and ma[de] threats to send him to jail or [that] he [would] never see their daughter again." Describing a prior history of domestic violence, plaintiff alleged that defendant "assaulted him by slamming a large heavy truck door on his foot" and claimed that she "curse[d], yell[ed]/scream[ed], ma[de] insulting comments[,] and call[ed] him degrading names."

On July 20, 2017, plaintiff amended his complaint to allege additional facts regarding the tracking device, including that it had been on his vehicle for a year and a half and defendant would call or text him about his whereabouts or what he was doing without disclosing how she knew his location. He added that

one time, minutes after leaving his older daughter's house,[2] defendant called the daughter and asked why plaintiff was over there, prompting the older daughter to worry that someone was watching them. Plaintiff called this incident "alarming" and characterized defendant's actions as taunting and harassing.

On July 31, 2017, the parties appeared before Judge Kamil for a final hearing. At the outset, the parties stipulated to the fact that defendant placed the tracker on plaintiff's truck. Plaintiff testified that prior to discovering the tracking device, he received numerous invasive and "harassing messages" from defendant at least once a week asking about his whereabouts. He noted that defendant pinpointed his locations several times and once sent a picture of one of his cars in front of a gym.

Plaintiff described defendant's messages relating to her knowledge of his whereabouts as "alarming" and described how he went to Verizon and Apple to see if there was "something going on with [his] phone." He stated that defendant's messages were distracting him at work, affecting his sleep, and having an impact upon his relationship with his older daughter. He also described the incident when he went to his older daughter's house and a few minutes after leaving, she called him "and said hey, [defendant] just called me

---

[2] The older daughter was from an earlier marriage.

A-0691-17T3

and . . . wanted to know what you're doing at . . . my house. Why were you there? And . . . [the] daughter said Dad, are we being watched? Are we being followed? What's going on?"

Plaintiff then addressed the incident in which defendant allegedly slammed his truck's door on his foot. He explained that it occurred on a day when, despite defendant's promise that their daughter's belongings would be ready at her house when plaintiff was to pick the daughter up, neither the belongings nor defendant were at the house. Later, defendant brought the belongings to the daughter's friend's house, where she knew plaintiff would be stopping. According to plaintiff when he arrived at the friend's house and stopped his truck, "[t]he door came flying open[ and the daughter's] things got thrown into the truck . . . ." Plaintiff testified that his foot was hanging out of the door of the truck when he turned to see defendant, who allegedly slammed the door on his foot. He stated that he attempted to go to the gym a few days later but could not walk or run and that there was bruising on the top part of his foot and ankle. He produced a photo of the top of his foot.

Plaintiff also testified about the incident involving defendant taking their daughter to the beach rather than having her ready for his parenting time and about defendant later appearing at his house when he was not at home without

5

notifying him. Over defendant's attorney's objection, plaintiff also testified to the contents of allegedly harassing texts that defendant sent to him. He stated that generally, she "beat [him] down with name calling."

According to plaintiff, after he obtained a TRO, he had less stress in his life and was not being followed. He noted that he still was not sleeping well but was seeking the FRO so that he could "have [his] well-being and [his] peace back in . . . [his] life."

Defendant testified that she did not slam the door on his foot and recalled that the event took place during a mild hurricane. She said that she opened the truck door and threw their daughter's things into plaintiff's lap and went back to her car given the rain but never closed plaintiff's door. Defendant also testified about the beach incident and explained that she did not actually take their daughter to the beach but instead to a cousin's house during plaintiff's scheduled parenting time because he said that he had to work late and would call her later to arrange a pick-up but never did.

Defendant admitted to placing a GPS tracker on plaintiff's truck, not to stalk him but because she was concerned for their daughter's safety. She alleged that there were several instances where plaintiff was drinking and driving with their daughter in the car that gave rise to her concerns and resulted in her

A-0691-17T3

surreptitiously installing the tracking device on his truck, and at times, changing its battery while the vehicle was parked during the months before he discovered it.

Judge Kamil placed his decision on the record, explaining why he was denying an FRO against defendant. Addressing the parties' credibility, the judge stated the following:

> With regard to credibility, this court recognizes that this is a divorce case that's been going on for a long time, that these parties have been acrimonious. When you look at the credibility . . . the only credible things here is that there was a device on the vehicle and that she put it on the vehicle.
>
>     . . . .
>
> I don't necessarily find one of these . . . [parties] more credible than the other.

The judge turned to the proofs adduced during the trial and noted various significant omissions in the evidence. Among the missing evidence were copies of texts that plaintiff claimed defendant sent establishing that she was aware of his location or any medical testimony or reports concerning plaintiff's alleged depression or inability to sleep. According to the judge, any texts submitted had nothing to do with stalking. As to the alleged foot injury, the judge found that the photograph submitted by plaintiff depicted what "look[ed] like a normal foot

7

with a [slight] red . . . abrasion [at] the . . . top of the ankle." Judge Kamil also observed that any alleged harassing texts were sent "a number of years ago" and in any event, plaintiff failed to provide specific dates or times of other instances where he felt like defendant was harassing him.

Despite the deficiencies in plaintiff's proofs, the judge concluded that plaintiff established the predicate act of stalking. Judge Kamil stated that,

> if somebody . . . [has] concern[s] that people knew about their whereabouts all the time, it might cause emotional distress. It certainly might. And I think that this complaint reaches the level of preponderance for stalking. So, I find that the predicate act of stalking was done . . . [and] I have to accept and give [plaintiff] certain inferences with regard to . . . him checking his phone . . . with Verizon and . . . with Apple as to what's going on with his phone.

He added that defendant's conduct rose to the level of stalking because plaintiff was being constantly surveilled and that the surveilling was prohibited conduct under the PDVA.

Turning to the Silver factors, under the first prong, the judge again noted "a reasonable person who thought they were being followed or monitored would sustain some emotional distress . . . ." As to the second prong, Judge Kamil explained that he had to conduct an analysis as to whether a restraining order was required in light of previous domestic violence history, the existence of

8

immediate danger to a person and property, financial circumstances of the parties, the best interest of a child or victim, custody implications, and the existence of another jurisdiction's order of protection.

The judge found no previous history of domestic violence and did not find that the incident involving the alleged slamming of the truck door rose to the level of an assault. Further, he did not find plaintiff's allegations that he was being harassed to be credible. He also did not find a history of physical abuse against plaintiff or the existence of immediate danger to him or his property. The judge stated that while defendant should not have put a tracking device on plaintiff's truck, there was no evidence that she did anything beyond that in attempt to monitor their child.

The judge concluded by explaining that although he found that defendant committed an act of stalking,[3] plaintiff did not prove that an FRO was necessary.

---

[3] The elements of the stalking offense are stated in N.J.S.A. 2C:12-10, which states in pertinent part the following:

a. As used in this act:

(1) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through third parties, by any action, method, device, or means, following, monitoring, observing, surveilling, threatening, or communicating

He stated that he did not "find by any other evidence and testimony, credible testimony, that a restraining order [was] necessary to protect the victim from immediate danger or [to] prevent further abuse . . . ."  This appeal followed.

Plaintiff argues on appeal that Judge Kamil misapplied the legal standard under <u>Silver</u> when determining whether an FRO should be granted.  We find no merit to his contention.

<hr>

> to or about, a person, or interfering with a person's property; repeatedly committing harassment against a person; or repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.
>
> (2) "Repeatedly" means on two or more occasions.
>
> (3) "Emotional distress" means significant mental suffering or distress.
>
> (4) "Cause a reasonable person to fear" means to cause fear which a reasonable victim, similarly situated, would have under the circumstances.
>
> b. A person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.
>
> [N.J.S.A. 2C:12-10.]

A-0691-17T3

We accord "great deference to discretionary decisions of Family Part judges" given the "family courts' special jurisdiction and expertise in family matters." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (first quoting Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012); and then quoting N.J. Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010)). When reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). We do "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective that the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988).

The PDVA defines domestic violence by referring to a list of predicate offenses found within the New Jersey Criminal Code. J.D. v. M.D.F., 207 N.J.

458, 473 (2011). "[T]he commission of a predicate act, if the plaintiff meets the definition of a 'victim of domestic violence,' constitutes domestic violence . . . ." Ibid. (quoting N.J.S.A. 2C:25-19(d)).

In determining whether to issue an FRO, the court first must determine whether the plaintiff has established by a preponderance of the evidence that the defendant has committed a predicate act of domestic violence as defined in N.J.S.A. 2C:25-19(a). Silver, 387 N.J. Super. at 125. The court also must determine, by considering the factors enumerated in N.J.S.A. 2C:25-29(a)(1) to (6),[4] whether an FRO is necessary "to protect the victim from an immediate

---

[4] The factors are:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and

A-0691-17T3

danger or to prevent further abuse." Id. at 127; see also A.M.C. v. P.B., 447 N.J. Super. 402, 414 (App. Div. 2016).

"Commission of a predicate act is necessary, but alone insufficient, to trigger relief provided by the [PDVA]." R.G. v. R.G., 449 N.J. Super. 208, 228 (App. Div. 2017). The mere finding of a predicate act of domestic violence, standing alone, is insufficient to support the issuance of an FRO. Kamen v. Egan, 322 N.J. Super. 222, 227 (App. Div. 1999).

As we have stated in other opinions:

> The law mandates that acts claimed by a plaintiff to be domestic violence must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse and in light of whether immediate danger to the person or property is present. N.J.S.A. 2C:25-29(a)(1) and (2). This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated.
>
> [R.G., 449 N.J. Super. at 228-29 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995)).]

_____

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a)(1) to (6).]

13

Applying these guiding principles, we conclude that Judge Kamil's denial of an FRO was appropriate in this case. The judge properly performed his obligation under <u>Silver</u> and considered all of the statutory factors. His finding that an FRO was not necessary to protect plaintiff from an immediate danger or to prevent further abuse was supported by a lack of substantial credible evidence in the record that an FRO was needed for that purpose.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0691-17T3