# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2489-18T1

A.R.,

     Plaintiff-Appellant,

v.

J.M.,

     Defendant-Respondent.

_____

> Argued December 10, 2019 – Decided December 16, 2019
>
> Before Judges Hoffman and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0877-19.
>
> Diana E. Griffin argued the cause for appellant (Northeast New Jersey Legal Services, attorneys; Diana E. Griffin, of counsel and on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

Plaintiff A.R appeals from a December 19, 2018 Family Part order, dismissing her domestic violence complaint and temporary restraining order (TRO), and denying her application for a final restraining order (FRO) against defendant J.M., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Because we agree with plaintiff that the trial court misapplied the second prong of the two-prong test enunciated in Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006), we reverse and remand to the trial court for entry of an FRO.

I.

We glean the following facts from the testimony elicited at the FRO hearing. Plaintiff and defendant began dating in 2017. In February 2018, plaintiff became pregnant with defendant's child. The parties stopped dating around March 2018 but continued to romantically see each other through the summer. In late September 2018, plaintiff gave birth to the parties' son.

Plaintiff testified regarding three specific acts of domestic violence. In addition, plaintiff alleged defendant consistently became physical during their many disagreements. Defendant disputed plaintiff's testimony, alleging plaintiff was the aggressor, often getting physical with him, and denied becoming

2

physical with her. Defendant also testified that he showed restraint in response to plaintiff's physical aggression.

According to plaintiff, in May 2017, defendant saw something he did not like on her phone and confronted her. Plaintiff demanded defendant return her phone, but defendant refused, and the parties began chasing one another. The pursuit resulted in defendant pushing plaintiff into a fence. Defendant denied plaintiff's account.

Plaintiff further testified that in June 2018, defendant physically assaulted her, following what began as a verbal disagreement. Plaintiff testified defendant repeatedly punched her in the face and head. After the assault, plaintiff recounted defendant forcing her to stay in his home for several days until her bruising and swelling subsided. Defendant disputed plaintiff's account.

Plaintiff also produced an array of photographs depicting various injuries she sustained, as proof of the May 2017 and June 2018 incidents. Defendant claimed the photographs depicted bruising plaintiff acquired during training as a recreational boxer.

On October 17, 2018, an altercation following the exchange of the parties' son resulted in plaintiff filing the domestic violence complaint under review. Before going to work, plaintiff dropped off their two-week-old son to defendant,

who advised he planned to take their son to New York City with his family. In response, plaintiff expressed concerns regarding the cool weather and requested defendant return their son by 7:00 p.m. Defendant then took his son and daughter, his father, and his current girlfriend (the mother of his daughter), into Manhattan, with plans of having dinner that night.

At some point during the day, plaintiff attempted to call defendant's phone, but defendant did not answer. Plaintiff eventually contacted defendant's father and girlfriend. Plaintiff questioned them as to when they planned on coming home because she expected her son back by the requested time. Defendant's father explained they were in Central Park and running late, but that they would forego dinner and come home immediately. Plaintiff's subsequent calls became threatening. Fearing that defendant would attempt to kidnap their son, plaintiff threatened to call the police. Around 8:30 p.m., plaintiff called the police, who advised her they could not act based on the information provided.

At 9:30 p.m., defendant called plaintiff and notified her that she could come pick up their son. When plaintiff arrived, the parties immediately began arguing. Plaintiff testified that defendant pushed her into the wall and ripped her jacket, and then took her outside and slammed her to the ground. Moments

A-2489-18T1

later, defendant's father brought the parties son outside and demanded plaintiff leave the property.

At this point, plaintiff recounted she could not move her wrists, causing her friend, who was waiting in plaintiff's car down the street, to call the police. Plaintiff and her friend were escorted to a local hospital, where plaintiff received treatment for skin abrasions and a contusion.

Regarding the October 17 incident, defendant testified the parties got into a shouting match outside of his apartment building when plaintiff came to pick up their son. Defendant claimed plaintiff began pushing him towards the door while attempting to provoke a physical reaction. Defendant testified he stepped back into the building and closed the door on plaintiff's face, ending the altercation. Defendant further testified his family immediately went out for dinner following the incident; as a result, they were unaware police were responding to the apartment building.

Defendant's father and defendant's girlfriend also testified. Defendant's father corroborated defendant's account of the October 17 incident and the aggressive nature of plaintiff throughout the parties' relationship. During cross-examination of defendant's girlfriend, plaintiff's counsel established that she obtained a TRO against defendant in 2017, "because he put his hands around

5

[her] neck." Defendant later admitted to putting his hands around the neck of his girlfriend but claimed he did so to "push her off," in response to her physically assaulting him. Plaintiff's counsel cited this prior TRO against defendant constituted additional evidence supporting plaintiff's need for continued protection; however, the judge summarily rejected the argument without explanation, stating, "I can't consider that."

Throughout the hearing, the judge questioned the parties regarding whether a parenting order was in place. During closing arguments, the trial judge commented to plaintiff's counsel, "All [the parties] need to do is get a parenting time order to straighten out their problems, which is why I keep harping on it."

Following closing arguments, the judge rendered his oral decision. The judge recounted the evidence presented regarding domestic violence and analyzed the testimony pursuant to the framework established under Silver, 387 N.J. Super. at 126. Based on this assessment, the judge found that a "simple assault[,]" N.J.S.A. 2C:12-1(a), "occurred by a preponderance of the evidence[,]" as a result of the October 17 incident. The judge did not find that acts of domestic violence were established by a preponderance of the evidence

as to the May 2017 or June 2018 incidents. Nevertheless, the judge satisfied the first prong of <u>Silver</u> by finding the predicate act of simple assault occurred. <u>Ibid.</u>

However, after considering "how [the assault] occurred" and "the context in which it occurred[,]" the judge found that plaintiff failed to establish the continued need for protection in order to satisfy the second <u>Silver</u> prong. The judge explained:

> The question I have is whether a restraining order is needed to prevent further abuse or physical violence to the plaintiff. And again, I don't feel – the problem I have with that is I don't feel that it's the defendant's obsession with what [plaintiff] does or doesn't do. It's – it's a need – I find the need for a parenting time order a lot more than I find the need for a restraining order.
>
> So the fact that the relationship has been toxic in the past – and everyone kind of agrees with that description . . . that neither party acts well with – in the presence of the other. And even [plaintiff] says that. That's why it becomes a tough call here.
>
> I can find for a restraining order if I find, even without prior history, if the October 17th incident – which I [sic] have found has occurred by a preponderance of the evidence, if it's egregious enough to warrant the restraining order. And I don't feel it's – it's egregious enough. I'm going to deny the restraining order because I don't believe the need for the restraining order has been met . . . . I just believe what's needed here is a parenting time order.

Based on this reasoning, the judge denied the FRO and issued an order vacating the TRO.

Plaintiff filed a motion for reconsideration. The judge denied the motion, continuing to find no need for restraints. This appeal followed.

## II.

Ordinarily, "[i]n our review of a trial court's order entered following a trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

However, reversal is warranted when a trial court's findings are "so wide of the mark that a mistake must have been made." New Jersey Div. of Youth and Family Services v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). Likewise, "if the court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). Moreover, our review of a trial court's legal conclusions is

always de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In Silver, we determined that the trial judge must perform two tasks at an FRO hearing before deciding whether to grant or deny final relief to a person protected under the PDVA. 387 N.J. Super. at 125-26.

> First, the judge must determine whether plaintiff proved, by a preponderance of the credible evidence, that defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a). If the judge finds plaintiff did not meet this burden of proof, the court must dismiss the complaint. But if the court finds a defendant committed one or more of the predicate acts listed in N.J.S.A. 2C:25-19(a), the judge must determine whether an FRO is needed to protect the victim.
>
> [A.M.C. v. P.B., 447 N.J. Super. 402, 413 (App. Div. 2016) (citing Silver, 387 N.J. Super. at 125-26.)]

In determining whether an FRO is needed to protect the victim, we offered the following guidance:

> Although this second determination – whether a domestic violence restraining order should be issued – is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse.
>
> [Silver, 387 N.J. Super. at 127.]

Here, despite finding that defendant committed the predicate act of assault, N.J.S.A. 2C:12-1(a), based on the events of October 17, 2018, and despite acknowledging the parties' "toxic" relationship, the judge decided against issuing an FRO. In A.M.C., we emphasized that determining whether a court may "properly refuse to issue restraints" despite "finding that a defendant committed one of the predicate acts listed in N.J.S.A. 2C:25-19(a)," courts may consider two key factors: "(1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim." 447 N.J. Super. at 414.

Here, the parties' testimony demonstrated a pattern of domestic contretemps and a predicate act involving physical violence was clearly present. Nonetheless, in finding no need for restraints, the judge focused on the fact that no parenting order had been in place, opining that such an order would "straighten out [the parties'] problems." However, in the course of this analysis, as we found in A.M.C., "the judge minimized one of the principal concerns that drove our analysis in Silver. Whether the predicate offense involved a violent act." Id. at 416 (citing Silver, 387 N.J. Super. at 127).

In A.M.C., while we acknowledged "that the Legislature did not intend that the commission of any one of these [predicate] acts automatically mandates

the issuance of a domestic violence order[,]" id. at 417 (quoting Silver, 387 N.J. Super. at 123), we reiterated that "[w]hen the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'" Ibid. (quoting Silver, 387 N.J. Super. at 127). Moreover, we find that the judge failed to give sufficient consideration to the recent birth of the parties' child – which the judge acknowledged would bring the two into contact and serve as an inevitable source of conflict.

Guided by these principles, we are satisfied plaintiff established the need for an FRO as a matter of law. We reach this conclusion based on defendant's commission of a predicate act that involved physical violence against plaintiff, N.J.S.A. 2C:12-1(a), N.J.S.A. 2C:25-19(a)(2); the evidence demonstrating a previous history of violence between the parties, N.J.S.A. 2C:25-29(a)(1), and the fact that, under the circumstances, the issuance of final restraints is undoubtedly in plaintiff's best interests, N.J.S.A. 2C:25-29(a)(4). "In short, this type of case for which the issuance of final restraints should have been axiomatic, or, . . . 'perfunctory and self-evident[,]'" A.M.C., 447 N.J. Super. at 418 (quoting Silver, 387 N.J. Super. at 127), in order "to prevent further

abuse[,]" <u>Silver</u>, 387 N.J. Super. at 127, notwithstanding the fact that, arguably, there was no "immediate danger . . . ." <u>Ibid.</u>

The trial court's order denying plaintiff an FRO under the PDVA, despite finding defendant physically assaulted plaintiff on at least one occasion, is reversed. Applying the two-prong standard in <u>Silver</u> and viewing the entire record, we conclude the trial judge mistakenly failed to issue an FRO and hold that plaintiff was entitled to an FRO as a matter of law. We therefore reverse and remand this matter to the Family Part for the immediate entry of an FRO against defendant. The court shall conduct a review hearing within twenty-one days to address relevant issues between the parties involving their son, including visitation, support, and related matters.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION