# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0493-19T1

K.B.,

    Plaintiff-Appellant,

v.

A.R.,

    Defendant-Respondent.

_____

        Argued November 10, 2020 – Decided November 30, 2020

        Before Judges Yannotti and Haas.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FV-01-0215-20.

        Katelyn E. McKenzie argued the cause for appellant (South Jersey Legal Services, attorneys; Katelyn E. McKenzie, on the briefs).

        Ed Weinstock argued the cause for respondent (Levin Weinstock Levin, attorneys; Kirsten A. Levin, on the brief).

PER CURIAM

Plaintiff K.B. appeals from a September 12, 2019 Family Part order dismissing her domestic violence complaint and temporary restraining order (TRO) and denying her application for a final restraining order (FRO) against defendant A.R., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  Because we agree with plaintiff that the trial court misapplied the second prong of the two-prong test enunciated in Silver v. Silver, 387 N.J. Super. 112, 126 (App. Div. 2006), we reverse and remand for the entry of a FRO.

I.

The parties were friends for approximately six years and would often meet at the bar where plaintiff worked as a bartender.  Defendant is about twenty years older than plaintiff.  In July 2019, defendant moved into plaintiff's one-bedroom apartment in order to help her with her expenses.  Plaintiff testified that the parties have never had a romantic relationship, and the living arrangement was a temporary one.  Plaintiff slept on the bed in her bedroom, and defendant slept on a reclining chair in the living room.

On the evening of August 9, 2019, plaintiff and defendant were drinking and using cocaine with plaintiff's father and a friend.  At some point during the evening, defendant went into the bedroom and fell asleep in plaintiff's bed.

A-0493-19T1

Around 6:00 a.m. on the morning of August 10, plaintiff went into her bedroom, found defendant asleep, and got into the opposite side of the bed. Plaintiff did not ask defendant to move because her father and the friend were sleeping in the living room, and defendant would have had to sleep on the floor.

At approximately 2:00 p.m., plaintiff awoke to find that defendant had pulled her pants down as she was sleeping on her stomach and had penetrated her vagina with his penis. Plaintiff testified that she initially "froze." However, when defendant began making sounds indicating he was about to ejaculate, she "snapped back to reality" and pushed defendant off of her. Plaintiff then wrapped herself in a blanket and fell back asleep.

When plaintiff awoke a few hours later, she found defendant "still in the room with" her, and she "freaked out." She hit defendant "a lot, cried, [and] yelled." She told defendant to leave the apartment, and he complied.

At trial, plaintiff reported that a few days before the sexual assault, defendant had masturbated in front of her and touched her with his erect penis while he did so. Defendant also offered to give plaintiff money and a tanning salon membership if she would "give him a taste." Plaintiff refused.

After defendant left the apartment, plaintiff called the police. She went to the hospital, and a "rape kit" was performed. On August 11, 2019, plaintiff

A-0493-19T1

filed a domestic violence complaint against defendant, charging him with sexual assault, N.J.S.A. 2C:14-2, and a municipal court judge entered a TRO against defendant that same day.

Plaintiff testified she needed the continued protection of a FRO because she was afraid of defendant, whom she believed had been her friend. She had already "gone to two therapy sessions" and had been unable to sleep in her bedroom since the time of the assault. Plaintiff also had to change the locks to her apartment and was "looking into getting a security system."

Defendant testified that he and plaintiff were drinking and using cocaine with plaintiff's father and a friend. He stated he went into plaintiff's bedroom to watch a movie and fell asleep on plaintiff's bed.

At some point, defendant noticed that plaintiff was in the bed. He testified he put either his hand or his arm "around her," and she "nudged back, like, . . . pushing back her butt." Defendant stated he "started rubbing on" plaintiff, and then penetrated her with his penis. Defendant claimed that he got off plaintiff on his own accord and then "finished" by masturbating.

Defendant testified he then got in bed again with plaintiff and, sometime later in the day, she accused him of sexually assaulting her. Defendant stated

that he now lived with his mother about forty-five minutes away from plaintiff and had "no ties" or mutual friends with her.

Following closing arguments, the judge rendered her oral decision. Although the judge did not recount the parties' testimony, she specifically found plaintiff's testimony to be "credible with reference to the predicate act . . . ." At the same time, however, the judge also "found [defendant] credible in that, you know, he got a different read of this situation."

The judge explained that the case came down to an analysis of the second Silver prong. The judge stated she understood plaintiff's argument "that this is such an egregious act that [the judge did not] even have to go the second prong." But, the judge concluded that because defendant no longer lived with or near plaintiff, she failed to establish a continued need for protection as required by Silver. Therefore, the judge dismissed plaintiff's complaint and vacated the TRO.

After filing her notice of appeal, plaintiff asked the judge to stay the dismissal of the TRO pending the disposition of her appeal. The judge denied this request. On December 5, 2019, however, this court granted plaintiff's "motion for a stay pending appeal and reinstate[d] the August 11, 2019 [TRO] entered in her favor."

A-0493-19T1

II.

Ordinarily, "[i]n our review of a trial court's order entered following a trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

However, reversal is warranted when a trial court's findings are "so wide of the mark that a mistake must have been made." New Jersey Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). Likewise, "if the court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). Moreover, our review of a trial court's legal conclusions is always de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In Silver, we determined that the trial judge must perform two tasks at an FRO hearing before deciding whether to grant or deny final relief to a person protected under the PDVA. 387 N.J. Super. at 125-26.

> First, the judge must determine whether plaintiff proved, by a preponderance of the credible evidence, that

A-0493-19T1

defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a). If the judge finds plaintiff did not meet this burden of proof, the court must dismiss the complaint. But if the court finds a defendant committed one or more of the predicate acts listed in N.J.S.A. 2C:25-19(a), the judge must determine whether a[] FRO is needed to protect the victim.

[A.M.C. v. P.B., 447 N.J. Super. 402, 413 (App. Div. 2016) (citing Silver, 387 N.J. Super. at 125-26).]

In determining whether a FRO is needed to protect the victim, we offered the following guidance:

Although this second determination – whether a domestic violence restraining order should be issued – is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse.

[Silver, 387 N.J. Super. at 127.]

Here, despite the uncontradicted evidence that defendant penetrated plaintiff's vagina with his penis while she was asleep, the judge decided against issuing a FRO. As noted above, the judge specifically found that plaintiff's testimony about the predicate act was credible.

Although the judge also found that defendant's "read of the situation" was credible, that is simply not the test on the question of whether a sexual assault occurred. As our Supreme Court made clear in In re M.T.S., 129 N.J. 422, 447-

48 (1992), "the factfinder must decide whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration." As in this case, the victim in M.T.S was sleeping, and, when she awoke and found the defendant engaged in penetration, she objected and he stopped. Id. at 426. Under those circumstances, the Court concluded that the defendant had committed a sexual assault under N.J.S.A. 2C:14-2(c)(1) because "the victim had not expressed consent to the act of intercourse, either through her words or actions." Id. at 450.

Here, any belief expressed by defendant that plaintiff consented to his act of penetration was clearly not reasonable. Plaintiff was asleep when defendant began the assault and did not awaken completely until he had almost finished. Even if plaintiff "nudged" defendant while she was still sleeping after he touched her with his hand or arm, that was certainly not the type of affirmative permission required to establish consent. Thus, defendant clearly committed the predicate act of sexual assault against plaintiff.

We now turn to the second Silver prong. In A.M.C., we emphasized that determining whether a court may "properly refuse to issue restraints" despite "finding that a defendant committed one of the predicate acts listed in N.J.S.A.

8

2C:25-19(a)," courts may consider two key factors: "(1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim." 447 N.J. Super. at 414.

Plaintiff demonstrated defendant's prior acts of domestic violence through her uncontested testimony that defendant had touched her with his erect penis while he was masturbating and also propositioned her to "give him a taste" in return for money and a gift. A predicate act involving physical violence was also plainly present.

Nonetheless, in finding no need for restraints, the judge focused on the fact that it was unlikely the parties would encounter each other again because defendant left plaintiff's apartment and moved forty-five minutes away. In so ruling, however, "the judge minimized one of the principal concerns that drove our analysis in Silver: Whether the predicate offense involved a violent act." A.M.C., 447 N.J. Super. at 416 (citing Silver, 387 N.J. Super. at 127). Indeed, while we acknowledged in A.M.C. "that the Legislature did not intend that the commission of any one of these [predicate] acts automatically mandates the issuance of a domestic violence order[,]" id. at 417 (quoting Silver, 387 N.J. Super. at 123), we reiterated that "[w]hen the predicate act is an offense that

9

inherently involves the use of physical force and violence, the decision to issue a[] FRO 'is most often perfunctory and self-evident.'" Ibid. (quoting Silver, 387 N.J. Super. at 127).

Guided by these principles, we are satisfied plaintiff established the need for a FRO as a matter of law. We reach this conclusion based on defendant's commission of a predicate act that involved physical violence against plaintiff, N.J.S.A. 2C:14-2(c)(1), N.J.S.A. 2C:25-19(a)(7); the evidence demonstrating a previous history of domestic violence between the parties, N.J.S.A. 2C:25-29(a)(1); and the fact that, under the circumstances, the issuance of final restraints is undoubtedly in plaintiff's best interests, N.J.S.A. 2C:25-29(a)(4). "In short, this is the type of case for which the issuance of final restraints should have been axiomatic, or, . . . 'perfunctory and self-evident[,]'" A.M.C., 447 N.J. Super. at 418 (quoting Silver, 387 N.J. Super. at 127), in order "to prevent further abuse." Silver, 387 N.J. Super. at 127.

Applying the two-prong standard in Silver and viewing the entire record, we conclude the judge mistakenly failed to issue a FRO, and we hold that plaintiff was entitled to a FRO as a matter of law. We therefore reverse and remand this matter to the Family Part for the immediate entry of a FRO against defendant. The TRO shall remain in place until the FRO is issued in accordance with this opinion.

A-0493-19T1

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION