**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3761-19

C.J.B.,

    Plaintiff-Respondent,

v.

M.J.B.,

    Defendant-Appellant.

_____

Submitted September 15, 2021 – Decided September 28, 2021

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1769-20.

The Gorman Law Firm, attorneys for appellant (Scott A. Gorman, of counsel and on the brief).

Kirah M. Addes, attorney for respondent.

PER CURIAM

Defendant M.J.B.[1] appeals from a June 3, 2020 final restraining order (FRO) entered in favor of her sister, plaintiff C.J.B., under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

The parties lived together in Jamaica during their childhood. They also resided together as adults from 2010 to 2012, when defendant moved to her own residence. Because the parties became estranged after 2012, they had limited contact with one another in the last several years.

According to the testimony adduced at the FRO hearing, defendant showed up uninvited at plaintiff's home at 1:00 a.m. on April 25, 2020. Plaintiff testified that defendant found her way upstairs to plaintiff's bedroom and knocked on the locked bedroom door. Plaintiff stated she had been sleeping but got out of bed, opened the door and saw defendant "rushing at [her]." She testified defendant grabbed plaintiff by the neck, squeezed plaintiff's throat with one hand to "choke" her, and hit plaintiff on the side of her head with her other hand. Plaintiff also testified she was able to "ease [defendant's] pressure off as much as possible and called for help." In response, the parties' nephew, who

---

[1] As required by Rule 1:38-3(d)(10), we use initials to protect the privacy of the parties and the confidentiality of these proceedings.

lived in the same household, entered plaintiff's room, pulled defendant away from plaintiff and called the police.

Plaintiff further testified there was a history of domestic violence between the parties. She explained that in 2018, defendant repeatedly phoned her, cursed at her and called her "dirty names." Plaintiff stated defendant threatened to kill her if defendant met her "in the street." Also, once she stopped taking defendant's phone calls, defendant wrote plaintiff a letter, repeating her threat to kill plaintiff "[w]henever . . . she [met her] in the street." Plaintiff testified that several years prior to these threats, defendant "said she was going to pour hot oil on" plaintiff.

Plaintiff called her nephew to testify at the FRO hearing. He stated that on the night of the incident, he heard plaintiff screaming, "dashed into her room to see what was going on, and . . . saw [his] two aunts in an altercation." He testified defendant "had the upper hand" and her hands were "mostly over [plaintiff's] body, but it was mostly focused around [plaintiff's] neck." Additionally, he confirmed he separated the parties and called the police.

When defendant testified at the final hearing, she admitted going to plaintiff's home uninvited on April 25 at 1:00 a.m. However, she denied that either party touched the other when they met. Instead, defendant testified that

after she went to plaintiff's bedroom, the parties' nephew "push[ed] her from behind, and [she] fell into [plaintiff's] room."

The judge found the court had jurisdiction over this matter based on the parties having lived together "for the period of 2010 to 2012," adding that plaintiff "falls within the class of persons to be protected by the [PDVA]." The judge credited plaintiff's and her nephew's testimony, noting the nephew corroborated plaintiff's description of the incident. On the other hand, the judge discredited defendant's testimony, finding it "was the exact polar opposite of what was presented by" plaintiff, and that it did "not ring true." The judge "categorically rejected" defendant's representation "that nobody put anybody's hands on anyone until [the parties' nephew] pushed her."

In assessing whether plaintiff established the need for an FRO, the judge first concluded defendant committed the predicate acts of assault, N.J.S.A. 2C:12-1(a)(1),[2] and harassment, N.J.S.A. 2C:33-4(b).[3] Further, the judge found

_____

[2] "A person is guilty of assault if he: (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]" N.J.S.A. 2C:12-1(a)(1). N.J.S.A. 2C:11-1(a) defines: "bodily injury" as "physical pain, illness or any impairment of physical condition[.]"

[3] The judge specifically referenced subsection (b) of the harassment statute, which provides, in pertinent part, that "a person commits a petty disorderly persons offense if, with purpose to harass another, he [or she]: . . . . Subjects

4

plaintiff was injured during the April 25 incident, noting the altercation "ultimately resulted with hands around [plaintiff's] neck." Additionally, the judge found there was a prior history of domestic violence, because defendant stated she "would kill [plaintiff], and 'spill hot oil on [her].'" The judge also credited plaintiff's testimony that she "fears for her life and . . . she has actually limit[ed] . . . her social movement because of this fear." Based on these factual and credibility findings, the judge granted plaintiff's request for an FRO.

On appeal, defendant argues the judge erred by exercising "jurisdiction over the defendant when the parties had not been members of the same household for eight years and had very limited interaction with one another since that time." Defendant further contends the judge mistakenly granted the FRO to plaintiff "to prevent her from being subjected to future acts of domestic violence" because "the parties have had almost no interaction with one another for several years leading up to the predicate act and there is no evidence of the [defendant] ever committing an act of violence prior to the predicate act." These arguments are unavailing.

---

another to striking, kicking, shoving, or other offensive touching, or threatens to do so." N.J.S.A. 2C:33-4(b).

A-3761-19

Our scope of review of Family Part orders is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. <u>Id.</u> at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." <u>Id.</u> at 412. A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand[.]" <u>N.J. Div. of Youth & Fam. Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008). Also, we will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Cesare</u>, 154 N.J. at 412 (quoting <u>Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions, and review such conclusions de novo. <u>Thieme v. Aucoin-Thieme</u>, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting <u>State v. Brown</u>, 394 N.J. Super. 492, 504 (App. Div. 2007)); <u>see also</u> N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," <u>J.D. v. M.D.F.</u>, 207 N.J.

6                                                                    A-3761-19

458, 473 (2011) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

When considering whether the entry of an FRO is appropriate, a trial court must "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver v. Silver, 387 N.J. Super. 112, 125 (2006). If the court finds the defendant has committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to - 29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127; see also J.D., 207 N.J. at 475-76. Guided by these standards, we are convinced the judge correctly exercised jurisdiction in this matter and properly found plaintiff was entitled to an FRO.

We need not address defendant's jurisdictional argument at length. Suffice it to say, before a trial court can exercise jurisdiction over parties in a

domestic violence matter, it must find the alleged victim meets the statutory definition of a "victim of domestic violence" under N.J.S.A. 2C:25-19(d). See R.G. v. R.G., 449 N.J. Super. 208, 219 (App. Div. 2017). This statute provides, in part, that a "victim of domestic violence" "shall include any person who is [eighteen] years of age or older . . . and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member." N.J.S.A. 2C:25-19(d) (emphasis added). Plaintiff easily meets this definition, having lived with defendant not only as a child, but as recently as 2012.

We also are not persuaded the judge erred in granting plaintiff an FRO after finding defendant committed the predicate acts of assault and harassment. As we recently reaffirmed, "[w]hen the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127). Here, defendant's actions of squeezing her sister's neck and choking her were unmistakably violent.

Moreover, the judge appropriately considered the factors set forth under N.J.S.A. 2C:25-29(a)(1)-(6) before concluding a restraining order was necessary

to protect plaintiff. For example, the judge found defendant committed prior acts of domestic violence, including her threat to kill plaintiff. Further, the judge found "immediate danger to person or property" existed, given that the "struggle" on April 25 "resulted with [defendant's] hands around [plaintiff's] neck." The judge also noted plaintiff "has a constant fear [of defendant] and . . . actually limits . . . her social movement because of this fear."

Given our deferential standard of review, as well as our consideration of the testimony provided at trial, we perceive no basis to second-guess the judge's factual and credibility findings. Accordingly, her conclusion that plaintiff established the need for an FRO, as a matter of law, is unassailable.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3761-19