**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1467-20

E.J.P.S.,

    Plaintiff-Respondent,

v.

R.A.K.,

    Defendant-Appellant.

_____

Submitted December 16, 2021 – Decided December 27, 2021

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1390-20.

Kevin C. Orr, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

Defendant R.A.K.[1] appeals from the Family Part's October 30, 2020 final restraining order (FRO) entered in favor of plaintiff E.J.P.S. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

Plaintiff and defendant are married and have no children together. On May 8, 2020, plaintiff called her insurance company to report a car accident. During the call, plaintiff asked defendant to respond to one of the insurance agent's questions. Defendant took the telephone but would not return it to plaintiff as the call continued. Plaintiff left the room.

When defendant completed the call, he started screaming at plaintiff because she had left the room. Plaintiff told defendant she was going to call a lawyer. At that point, defendant tried to get the telephone away from plaintiff, pushed her, and grabbed her right arm. He told plaintiff "he was never [going to] give [her a] divorce" but then ordered her to leave the home and pushed her again. Plaintiff called 911 and the police responded. Plaintiff suffered a bruised arm in the altercation.

---

[1]  We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. See R. 1:38-3(d)(9) to (10).

A-1467-20

Plaintiff also testified to a past history of similar assaults.[2] She stated the parties had an argument on April 14, 2019, and defendant grabbed her by the arm, leaving a bruise and preventing her from leaving the home. Defendant bruised plaintiff's arm in this incident. On June 9, 2019, plaintiff left a restaurant after the parties argued. Defendant then blocked her path with his car and attempted to push her into the vehicle. Plaintiff sustained a bruise to her chin.

On December 20, 2019, defendant became angry at plaintiff after she returned home from work. He pushed her on the sofa, put his knees on plaintiff's legs, grabbed her arms, and put his weight on her chest to keep her from moving. Defendant bruised plaintiff's arm and leg in this attack. On March 11, 2020, defendant grabbed plaintiff, pushed her to the ground, and scratched her face during an assault. Plaintiff testified she needed a FRO for protection because she was fearful of what defendant might do to her.

Defendant did not strongly dispute any of plaintiff's allegations. Instead, defendant claimed he grabbed plaintiff whenever she became "emotional" in order to "calm her down." Defendant stated, "You know, I always hold her down slightly with her arms. And I don't . . . want to hurt her or anything. But with her moving[,] she bruises very fast, and that's the issue."

---

[2] Plaintiff presented photographs at the trial showing each of her injuries.

A-1467-20

At the conclusion of the hearing, the trial judge rendered an oral decision granting plaintiff's application for a FRO. The judge found plaintiff credibly testified that defendant assaulted her on May 8, 2020. The judge also accepted plaintiff's account of the past incidents of domestic violence. The judge found that an FRO was necessary because defendant

> continually engage[d] in domestic violence abuse against [plaintiff], especially because he keeps blaming her for his abuse. And then apologizes. You know the cycle of domestic violence. There's an acute explosion. Here the continu[al] holding of one down and controlling and securing. Then there's an apology. As [defendant] testified, [h]e always apologized. That's called the honeymoon phase. And then . . . the aggression continues, and then there's another abuse. And he's continually blaming [plaintiff] for that abuse.
>
> So I do find that the previous history of the domestic violence, I find that by a preponderance of the . . . evidence, and absolutely does substantiate and require this [c]ourt to issue the [FRO] so that [plaintiff] is protected from the continuing and ongoing cycle of this domestic violence.

On appeal, defendant argues "the [FRO] was entered upon an insufficient showing of need and therefore same must be set aside." We disagree.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-

4

12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting D.Y.F.S. v. E.P., 196 N.J. 88, 104 (2008)). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, and

assault, N.J.S.A. 2C:12-1(a), as conduct constituting domestic violence.  Id. at 125-26.  The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator."  Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1).

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."  J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127).  Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse[,] and [on] whether immediate danger to the person or property is present."  Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)).

Applying these standards, we discern no basis for disturbing the trial judge's decision to grant a FRO to plaintiff.  The judge specifically found plaintiff's accounts of domestic violence credible, and substantial credible

evidence in the record supports that finding. Therefore, we affirm substantially for the reasons set forth in the judge's oral opinion. We add the following comments.

A person commits the predicate act of assault when he or she "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]" N.J.S.A. 2C:12-1(a)(1). "Bodily injury" is "physical pain, illness or any impairment of physical condition[.]" N.J.S.A. 2C:11-1(a); see also State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008).

After making credibility findings, the judge properly applied the statute in concluding defendant assaulted plaintiff on May 8, 2020 and on four prior occasions. During these incidents, defendant grabbed plaintiff, pushed her, and attempted to restrain her. He bruised or scratched her each time. Therefore, the judge correctly found that defendant committed an act of domestic violence in violation of the PDVA.

We now turn to the second Silver prong. Where, as here, "the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue a[] FRO 'is most often perfunctory and self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127).

7

Here, we are satisfied plaintiff established the need for a FRO as a matter of law. We reach this conclusion based on defendant's commission of a predicate act that involved physical violence against plaintiff, N.J.S.A. 2C:12-1(a), N.J.S.A. 2C:25-19(a)(2); the evidence demonstrating a previous history of domestic violence between the parties, N.J.S.A. 2C:25-29(a)(1); and the fact that, under the circumstances, the issuance of a FRO was undoubtedly in plaintiff's best interests, N.J.S.A. 2C:25-29(a)(4). Thus, it was self-evident that a FRO was necessary to protect plaintiff from what the judge accurately described as a "continuing and ongoing cycle of . . . domestic violence." See A.M.C., 447 N.J. Super. at 418.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Defendant contends that because the parties have no children and are planning to get divorced, they no longer have a need to be in contact with each other and, therefore, the judge erred by concluding a FRO was necessary. We rejected a similar argument in A.M.C., where we found that the absence of children "should not adversely affect [a plaintiff's] entitlement to permanent injunctive relief under the second prong of Silver" and that "[t]here is no rational basis for the judge to use the duration of the marriage as a reliable predictor of [the] defendant's future conduct with [the] plaintiff . . . ." A.M.C., 447 N.J. Super. at 415-416. Therefore, defendant's contention lacks sufficient merit to warrant further discussion in this opinion. See R. 2:11-3(e)(1)(E).

A-1467-20