# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1175-21

M.J.T.,

    Plaintiff-Respondent,

v.

C.J.T.,

    Defendant-Appellant.[1]

_____

Submitted September 28, 2022 – Decided October 12, 2022

Before Judges Messano and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-0057-22.

Tonacchio, Spina & Compitello, attorneys for appellant (Joseph Compitello, on the briefs).

DeNoia, Tambasco & Germann, attorneys for respondent (G. John Germann, on the brief).

PER CURIAM

---

[1] We use initials pursuant to Rule 1:38-3(d)(10).

Defendant C.J.T. appeals from a final restraining order (FRO) entered against him and in favor of plaintiff, M.J.T., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The parties were married for approximately three years, had no children, and were still living together when plaintiff filed a complaint and obtained a temporary restraining order (TRO) under the PDVA, alleging that on July 8, 2021, defendant assaulted her and made terroristic threats against her and her family. Plaintiff amended her complaint a few weeks later alleging numerous prior acts of domestic violence.

When the parties appeared for a virtual hearing on December 15, 2021, divorce proceedings had commenced, and plaintiff had moved out of state. Plaintiff testified to a history of domestic violence beginning in 2018. She described in detail several incidents in which defendant threatened her, locked her out of the house, caused physical damage to furniture in the home, threatened her at gunpoint, and choked her until she lost consciousness. Plaintiff introduced into evidence text messages defendant sent her, describing plaintiff in vile, degrading terms and threatening her with violence. She also introduced photographs of an alleged bite mark defendant inflicted on her during one of these incidents.

2

The events of July 2021 formed the basis of the PDVA complaint. Plaintiff testified the couple went to a party on the Fourth of July at the home of defendant's childhood friends. It grew late, and defendant became angry when plaintiff said she was tired. She went to sleep in the friends' guest room, and defendant grew more irate. His friends tried to calm defendant down, but he left and drove home without plaintiff.

Shortly thereafter, at 12:12 a.m., defendant began sending plaintiff insulting and degrading text messages, copies of which were admitted into evidence. When defendant's friend gave plaintiff a ride home the next morning, she found her mail torn up and thrown everywhere. Defendant continued to scream at her, called her a "[w]hore," "[s]lut," and "stupid," and accused plaintiff of having a sexual threesome with his friends. Defendant continued this behavior throughout the week.

On July 8, 2021—the date of the predicate offenses alleged in the PDVA complaint—defendant continued to berate plaintiff as she prepared for work in the morning. He told plaintiff "[h]e would hunt [her] down and cripple [her] and [her] entire family." Plaintiff left their residence and drove to the police station, where she filed the complaint and obtained a TRO.

Plaintiff testified she felt "[a]wful" and "scared" that morning because defendant had "physically hurt [her] so many times in the past." She believed defendant could act on his threat based upon his past conduct. Plaintiff testified her refusal to have sex with defendant, coupled with defendant's belief that plaintiff was cheating on him, triggered combative and accusatory outbreaks. Plaintiff repeatedly testified she remained scared of defendant and felt the need for protection.

Defendant testified he "[did not] remember . . . any acts of violence" in the parties' relationship and never caused plaintiff physical harm, but he conceded using offensively coarse language on occasion. Defendant also admitted sending plaintiff insulting text messages in "an attempt to make her have some sort of reaction." Defendant had no intention of contacting plaintiff in the future.

In an oral opinion following the testimony, the judge considered the evidence in the context of our holding in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). There, we said when considering whether to issue an FRO, the trial judge must first decide "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred" (first Silver prong), and, if so,

4

"whether a restraining order is necessary . . . to protect the victim from an immediate danger or to prevent further abuse" (second Silver prong). Id. at 125, 127.

The judge first considered whether, pursuant to N.J.S.A. 2C:33-4(b), plaintiff proved defendant harassed her on July 8, 2021.[2]  The judge found plaintiff's testimony credible, noting "she was visibly shaken, upset, her voice cracking at times during her testimony."  Citing more than twenty-six years of judicial experience, the judge said he "kn[e]w when a witness [wa]s feigning testimony," and plaintiff's testimony did not "strike the [c]ourt as rehearsed or feigned."  On the other hand, the judge said defendant was "very evasive" during cross-examination, and his explanations for plaintiff's accusations were not credible.  The judge also found the text messages corroborated plaintiff's testimony.

He concluded defendant's "insecurity" over plaintiff's alleged affair with his best friend, and his "sexual frustrations" with plaintiff "degenerated into physical violence," leading him to commit an assault against plaintiff, pursuant

---

[2]  Neither the initial nor amended complaint included harassment as an alleged predicate act of domestic violence.  However, defendant conceded during trial that his actions established the elements of harassment, and defense counsel, in summation, also conceded the point.

A-1175-21

to N.J.S.A. 2C:12-1, and terroristic threats, pursuant to N.J.S.A. 2C:12-3. The judge recognized that the parties had no children and plaintiff had moved out of state. Nonetheless, given plaintiff's "credible" recounting of defendant's history of domestic violence, and her "objectively reasonable" fear for her safety, the judge found it was "self-evident" that under Silver, the court should issue an FRO. The judge issued the FRO, and this appeal followed.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). We also recognize "the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, 154 N.J. at 413. However, we do not defer to the judge's legal conclusions if "based upon a misunderstanding of . . . applicable legal

A-1175-21

principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B., 442 N.J. Super. at 215).

As he did at trial, defendant concedes that plaintiff proved harassment. However, he contends the judge erred by concluding an FRO was necessary "to protect [plaintiff] from an immediate danger or to prevent further abuse," i.e., the second Silver prong. 387 N.J. Super. at 127. Defendant notes that because plaintiff has relocated, the parties had no offspring, and it was unlikely they would have contact with each other in the future, an FRO was unnecessary. We disagree and affirm.

We recognized in Silver that determining whether an FRO is necessary to protect the victim from immediate danger or the threat of future abuse "is most often perfunctory and self-evident," although "the guiding standard" requires "an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6)." Ibid. In A.M.C. v. P.B., although the plaintiff's "husband . . . physically assaulted her on two separate occasions over a three-week period[,] . . . the trial judge found an FRO was not necessary . . . because plaintiff 'failed to establish . . . a mere likelihood that the parties would continue to interact in the future' or that [the] defendant posed a threat to her." 447 N.J. Super. 402, 405 (App. Div. 2016). The judge noted the relatively short nature of the marriage, the parties

7

had no children and would not be "interacting as parents," and the plaintiff's failure to prove all but two incidents of domestic violence, despite alleging many, mitigated against the need for an FRO. Id. at 411–12.

In reversing the trial court, we noted "courts may consider two key factors when determining whether to issue permanent restraints: (1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim." Id. at 414. Compare L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 536 (App. Div. 2011) (finding the second Silver prong not satisfied because the defendant's single remark to the plaintiff during the pendency of their divorce was an "isolated incident devoid of any menacing behavior by [the] defendant"). In A.M.C., "[t]he fact [the] plaintiff did not have children with [the] defendant should not adversely affect her entitlement to permanent injunctive relief under the second-prong of Silver." 447 N.J. Super. at 415.

We found the facts in A.M.C. presented the "type of case for which the issuance of [an FRO] should have been axiomatic or . . . 'perfunctory and self-evident.'" Id. at 418 (quoting Silver, 387 N.J. Super. at 127).

> We reach[ed] this conclusion based on: (1) defendant's history of domestic violence, which included both physical violence and threats of violence, N.J.S.A. 2C:25-29(a)(1); (2) plaintiff's decision to leave the

marital residence . . . which established "the existence of immediate danger," N.J.S.A. 2C:25-29(a)(2); and (3) the fact that, under these circumstances, the issuance of [an FRO] is indisputably in plaintiff's best interests, N.J.S.A. 2C:25-29(a)(4).

[Ibid.]

Here, the trial judge made specific findings based on credible evidence demonstrating a history of domestic violence and abuse by defendant over a period of years, and that defendant committed a predicate act threatening physical violence against the victim and her family that caused her to leave the home and proceed to the police station to secure a TRO. In explaining his credibility determinations, the judge made explicit reference to plaintiff being "visibly shaken" during her testimony nearly six months after the July 2021 incidents. The best interests of plaintiff made the issuance of an FRO clearly appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9